# Elizabeth Osborn v. David D. Osborn

[614 A.2d 390]

No. 91-308

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 10, 1992

Motion for Reargument Denied August 25, 1992

*Mary G. Kirkpatrick* and *Pamela Fitzgerald* of *Lisman & Lisman,* Burlington, for Plaintiff-Appellee.

*Kimberly B. Cheney* of *Cheney, Brock & Saudek, P.C.,* Montpelier, for Defendant-Appellant.

**Johnson, J.** Defendant husband appeals from a family court decision ordering payment to plaintiff of $40,788.05 under the terms of a divorce judgment, and wife cross-appeals the denial of certain interest payments under the same judgment. We affirm.

The original final order in this case was reversed by this Court in *Osborn v. Osborn,* 147 Vt. 432, 519 A.2d 1161 (1986). On remand, the parties reached a property settlement, and a judgment order based on their stipulation was entered on December 29, 1987. Husband paid $30,000 of the $230,000 due wife under terms of the settlement within forty-five days of the order, and the remaining $200,000 was to be paid by June 16, 1989. If that sum was not then paid, husband was to begin payments of $400 per month on July 1, 1989, to continue until the full amount of the balance was paid. There was no provision for interest on unpaid amounts.

This appeal focuses on an additional provision of the order dealing with property owned by the parties in Portugal. Husband was authorized to attempt sale of the property by December 16, 1989. If he sold it, wife would receive the entire net amount, up to a maximum of $200,000—the balance due under the property settlement. The language at issue in the judgment states:

> Elizabeth shall be entitled to receive the following sums of money from the sale proceeds:
>
> a. The entire net amount due the parties on account of the sale up to a maximum of $200,000. As used in Paragraph (a), "net amount" means the sale proceeds less commissions paid to any broker or Trustee reasonably necessary to procure a buyer.

The order also required husband to obtain an irrevocable letter of credit for $70,000, payable to wife if she had not been paid the full $200,000 by December 16, 1989.

Husband's attorney advised wife's attorney on September 14, 1989 that his client intended to sell the land in Portugal for about $80,000, and was going to deduct a $40,000 "trustee fee," before remitting the balance to wife. The "trustee fee" was evidently an amount that the record titleholders in Portugal demanded to allow the sale to proceed. The reason title had been placed in nominees or trustees was that under the law of Portugal nonresidents could not legally have taken title. The result was that the parties had no recourse in Portuguese courts, and the trustees could effectively demand a large fee to allow the sale to proceed. That sale was subsequently completed, on December 5, 1989, for $85,000, and husband deducted the "trustee fee" of about $40,000, a brokerage fee of $4,211.95 and miscellaneous expenses. Wife received $40,000 from the sale.

On September 14, 1989, wife deemed that the terms of the stipulation and order had been violated by husband's intention to deduct the "trustee fee" from the proceeds of the sale, and on the basis of an asserted anticipatory breach, demanded payment under the letter of credit from the issuing bank. The bank honored the letter, and wife received $70,000 about three months earlier than specified in the order.

Wife thereafter sought a contempt order against husband for deducting and withholding the $40,000 "trustee fee" and a declaration that she was within her rights to demand payment under the letter of credit. Wife also sought interest on settlement amounts outstanding after June 16, 1989. She moved for partial summary judgment, and husband also moved for summary judgment, denying contempt and seeking a declaration that the deduction of the $40,000 was proper.

The trial court allowed the brokerage fee, but found that the "trustee fee" could not be included in "commissions paid to any broker or trustee reasonably necessary to procure a buyer" and ordered husband to pay $40,788.05, plus interest from the date of sale, December 5, 1989. The court also found that there had been no justification for wife's early demand under the letter of credit and ordered her to pay lost interest of $2,312.65, plus interest on that amount from the day of the demand exercise, September 18, 1989. Both appeals followed.

I.

Husband argues that the property order and underlying stip-

ulation were ambiguous and that the trial court erred when it failed to consider evidence of the "surrounding circumstances" in an effort to interpret their terms. Specifically, husband faults the court for failing to account for what the parties knew and intended by the phrase "commissions necessary to procure a buyer" and what they said to each other at the time they reached a written understanding.

In *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988), we held:

> [W]e believe it appropriate, when inquiring into the existence of ambiguity, for a court to consider the circumstances surrounding the making of the agreement. Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable.

Although a trial court may examine the factual circumstances under which an agreement is reached, the question of the existence of ambiguity remains unequivocally a question of law for the court to decide. *Id.* at 577, 556 A.2d at 83. In the present case, the heart of the trial court's decision is its conclusion—after a consideration of "surrounding circumstances"—that the parties intended to allow deduction of only a broker's commission, and not any other fees, even if payment of those fees was a required condition of the sale. Those "surrounding circumstances" strongly support the court's conclusion that there was no ambiguity. The proceedings in this matter have been vigorously pursued from the outset, as is evident from the first appeal to this Court and, even more so, from the intense and thorough advocacy in the present round. As the court put it:

> The court has carefully considered the circumstances surrounding this document [i.e., the order]. There was a contested property settlement and maintenance award. The formation of the agreement was preceded by nearly two days of testimony. The document was written and reviewed by competent counsel paragraph by paragraph. Other provisions of the agreement are consistent with the plain meaning of the words and do not contradict the court's interpretation of those words as detailed below. None of

these circumstances lead the court to believe that there is an equally reasonable alternative to the plain meaning of the words.

■ Although the ultimate question of ambiguity is a question of law, a court's consideration of the factual circumstances surrounding the text of an agreement will be viewed with the same deference as we give to any other factual findings, and that consideration will not be set aside unless clearly erroneous. See, e.g., *Sutton v. Sutton*, 147 Vt. 639, 640, 523 A.2d 1249, 1250 (1987). In the present case it is clear that the trial court put the words of the order in the proper factual context.

Husband argues that both parties were aware of the potential deduction from the sale, and faults the court for failing to consider the affidavit of a New York attorney familiar with the negotiations stating that at the date of the stipulation underlying the order the parties were aware of the amount that might have to be paid to the trustees in order to effect sale. But wife's awareness of the trustees' demands does not imply agreement that the "trustee fee" would be treated as a "commission paid . . . to procure a buyer." The economics of their respective positions would have suggested a very different understanding. If the unpaid balance of $130,000 were not received in full by June 16, 1989, husband was to begin payments of $400 per month until the total settlement amount was reached. The main source of the additional payments was to be the proceeds of the sale of the Portugal property. Every net dollar from the sale would reduce the balance payable by husband in the future. At the same time, because of the parties' tenuous legal position under Portuguese law, the trustees commanded a powerful bargaining position.

■ With these facts as background, husband asks this Court to conclude as a matter of law that wife's knowledge of the trustees' demands implied that she agreed to credit him with a greater amount than the total he could be expected to "net" from the sale, given the parties' legal predicament in Portugal. This would have been an irrational agreement on her part, since that outcome would have left a greater balance to be paid at the rate of $400 per month, with no provision for inter-

est on the unpaid balance.* Assuming she knew of the trustees' demands, a more plausible version of an understanding between the parties might have been one that allowed husband to pay whatever "trustee fee" he wished to pay, thereby reducing the amount to be paid out in future periodic payments, but which would credit him only with the amount of net proceeds after paying both any brokerage commission necessary to find a buyer and any "trustee fee." That understanding would leave in the hands of husband (who had sole control over the sale as between the parties) the decision whether to pay the "trustee fee," after weighing his own benefits against his own costs.

Viewed in that light, proof that the parties were aware of the possibility of a significant "trustee fee" at the time of the stipulation does not weigh in favor of husband's interpretation of the agreement, even if the terms were ambiguous. What husband proves, if anything, is that both parties knew that a "trustee fee" was looming, and that he failed to obtain an agreement about the treatment of that fee different from that suggested by the logic of the parties' respective positions and the specific language of the agreement limiting husband's credits to "commissions paid to any broker or Trustee reasonably necessary to procure a buyer."

■ The court properly refused to consider a New York attorney's affidavit as to what the stipulation and resultant order meant. Though framed in terms of an explanation of an ambig-

---

* In light of the absence of an interest requirement on the unpaid balance, shifting a greater portion of the settlement to periodic payments by husband would have reduced the total present value of the settlement. If husband was not credited with the $40,000 payment to the "trustees," the result would have been that wife's funds in hand would be $140,000 (initial payment of $30,000, plus the $70,000 letter of credit, plus the $40,000), rather than $100,000.

Husband could have avoided making the additional $40,000 cash "down payment" to wife by declining to sell the property in Portugal. That option would have stretched out the period of monthly payments, reducing the present value of the settlement to plaintiff. But it would also have denied husband the net proceeds of the sale as a credit against his total obligation—making the no-sale option a "lose/lose" proposition.

Husband's argument that wife's knowledge of the "trustees'" demand implies allowance of the $40,000 as an added brokerage commission—an outcome that would only favor him—flies in the face of logic. The trial court's failure to so find was not clearly erroneous.

uous term of the agreement, the affidavit sought to show that "commissions paid to any broker or Trustee reasonably necessary *to procure a buyer*" meant a fee paid to the trustees having nothing to do with the procuring of a buyer, a modification of a prior agreement. See *Tilley v. Green Mountain Power Corp.*, 156 Vt. 91, 93, 587 A.2d 412, 414 (1991). The court committed no error in construing the words of the order.

## II.

Wife argues on cross-appeal that the court erred in declaring that husband had not anticipatorily breached terms of the judgment by agreeing to pay the $40,000 "trustee fee" and then deducting the amount of the fee from the net proceeds to her. The trial court was correct that husband's interpretation of the order—right or wrong—was not a repudiation of the parties' agreement and in no event sanctioned wife's premature call on the letter of credit. Wife's remedies under the order were clear and did not involve self help. The court properly allowed husband's interest on $70,000 for the period up to the date of authorized exercise.

Wife also contends that she should be awarded interest on that part of the $200,000 unpaid after June 16, 1989. The parties' stipulation and the ensuing order specifically provided that after that date husband was required to begin periodic monthly payments of $400. Because the agreement and order did not provide for interest on the unpaid balance, husband had an incentive not to pay in full by that date, or to pay as little as he properly could under the agreement. Therefore, leaving such a large portion of the balance to periodic payments was a clear alternative under the judgment. Just as husband may not be allowed to redraft this agreement to allow his own version of a broker's commission, wife should not be permitted to do the same with respect to an interest provision. The trial court ruled that the agreement should be enforced in accordance with its terms. It committed no error. See *Lewis v. Lewis*, 149 Vt. 19, 22, 538 A.2d 170, 172 (1987) (in disposing of marital property trial court should give great weight to any agreements between the parties).

*Affirmed.*