## Alice KIM v. Stephen KIM

[790 A.2d 381]

No. 01-008

December 19, 2001. Defendant Stephen Kim appeals from the Caledonia Family Court's enforcement order requiring him to make maintenance payments to plaintiff Alice Kim, defendant's former wife. The court held that under the couple's 1990 divorce decree defendant was required to make payments at the agreed upon pre-retirement amount, after defendant returned to work following a period of retirement. We affirm.

The parties were married for thirty-two years before their divorce in 1990. Defendant is an anesthesiologist who worked primarily at Northeastern Vermont Regional Hospital, in St. Johnsbury, Vermont. The divorce decree was based on a stipulation wherein defendant agreed to provide plaintiff with $50,000 in maintenance per year "until the later of his attainment of the age of 65 or his retirement." After that, maintenance would be reduced to $5,000 per year. At the time of the divorce defendant was 60.

Defendant worked until September 1999, when he announced his retirement at the age of 69, and he began to pay plaintiff the reduced amount of main-

tenance. In February 2000, defendant returned to work as an anesthesiologist at Northeastern Regional Vermont Hospital for a period of three months. During that time he earned $47,600. Plaintiff filed a motion to enforce the original divorce agreement requesting that she receive the higher maintenance amount because, she claimed, defendant was no longer retired and had returned to the active practice of medicine.

In a hearing held in October 2000, the court determined that because defendant had returned to work "in his chosen profession," he was responsible for paying the higher alimony amount. Therefore, the court ordered that defendant pay a pro-rated amount of the $50,000 for the three months that he was working as an anesthesiologist. Defendant appeals.

On appeal, defendant argues that the enforcement order was, in fact, a modification of the original divorce order. As such, defendant contends that plaintiff has not met her burden to demonstrate that modifying the original divorce stipulation was warranted by the circumstances. Furthermore, defendant contends that the court abused its discretion in modifying the order because the change imposed a new obligation on defendant that was not within the contemplation of parties at the time of the divorce.

Parties to a divorce action are permitted to negotiate the terms of their divorce for themselves. *Morissette v. Morissette,* 143 Vt. 52, 59, 463 A.2d 1384, 1388 (1983); see 15 V.S.A. § 553. Such agreements are "honored under the ordinary rules of contract." *Duke v. Duke,* 140 Vt. 543, 546, 442 A.2d 460, 462 (1982) (internal citation omitted). Despite defendant's attempt to characterize it as such, the court's order did not modify or set aside the divorce stipulation. Instead, the order was merely interpreting the original terms of the agreement. Absent ambiguity, contract interpretation is a matter of law. *Morrisseau v. Fayette,* 164

Vt. 358, 366, 670 A.2d 820, 826 (1995). Whether a contract is ambiguous is also a question of law. *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988).

The language of the stipulation contemplated that defendant would pay $50,000 per year until retirement and then the amount would be reduced to $5,000 per year. Although the stipulation does not address this exact scenario, "[t]o determine the meaning of a specific provision of a contract, we consider the whole instrument and construe it in harmony if possible." *John A. Russell Corp. v. Bohlig*, 170 Vt. 12, 17, 739 A.2d 1212, 1216-17 (1999). "If a contract, though inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous . . . ." *Isbrandtsen*, 150 Vt. at 580-81, 556 A.2d at 85 (internal quotations omitted). We do not find this contract ambiguous. The import of this clause is clear — while defendant was earning substantial wages as an anesthesiologist he would pay plaintiff a commensurate amount of maintenance. When defendant retired and his income was presumably diminished considerably, his maintenance obligation would be reduced accordingly. It would violate the intent of the agreement if defendant could escape the higher alimony amount by simply announcing his retirement and then returning to work. That defendant "retired" from October 1999 until February 2000 should not relieve defendant from the obligation to provide the higher maintenance amount while he was still practicing in the same specialty, at the same hospital as before he "retired." Had defendant continued to work as an anesthesiologist for three more years instead of three months there would be little doubt that he had not "retired." The situation, however, is not functionally different just because of the brevity of the assignment. According to the agreement, defendant's maintenance obliga-tion will be reduced upon retirement, not when defendant announces his retirement.

At the hearing on the motion below, the trial court emphasized that defendant was obliged to pay the higher maintenance award because he was working as an anesthesiologist, which was the profession in which defendant was employed at the time the stipulation was drafted. Thus the court interpreted the term "retirement" to refer to defendant's retirement from practicing anesthesiology. Should defendant "work at Wal-mart" or "go[] to the Fairbanks Museum as a guide," he would remain retired. We need not consider, however, what would happen if defendant returned to work at a different occupation, but with commensurate salary.

*Affirmed.*