2004 VT 45

# Christine Sumner v. John C. Sumner

[852 A.2d 611]

No. 03-267

Present: **Amestoy, C.J., Dooley, Johnson, Skoglund and Reiber, JJ.**

Opinion Filed May 7, 2004

*Mary P. Kehoe* of *Lisman, Webster, Kirkpatrick & Leckerling, P.C.*, Burlington, for Plaintiff-Appellee.

*Todd C. Hartsuff*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** Appellant, John C. Sumner [husband], appeals an order by the Chittenden Family Court directing him to execute a quitclaim deed in favor of his ex-wife, appellee Christine Sumner [wife], to implement a provision of their 1998 divorce decree granting her title to the marital home. Husband argues that the order fails to provide him security in the home to implement another provision of the divorce order requiring wife to pay him $21,455 for his interest in the home when the home is sold or the youngest child of the parties graduates from high school or turns 20 years of age. We affirm.

¶ 2. The parties were divorced on February 10, 1998; at that time they had three minor children. The final order and decree that is the subject of this dispute was based on a stipulation and was issued on May 10, 1998. Relevant here, Paragraphs 15 and 16 provide:

> 15. The dwelling house of the parties located in Colchester, Vermont shall become the sole and separate property of [wife]. She shall be responsible for all costs thereto, including but not limited to mortgage, taxes, insurance and maintenance since June 1, 1995 and hold [husband] harmless therefrom.

> 16. [Wife] shall pay [husband] the sum of $21,455.00 for his marital interest in said dwelling house. Said sum shall be paid upon sale of the house or at such time as the youngest child graduates high school or turns 20, whichever event happens first. The sum owed by [wife to husband] shall accrue simple interest at the rate of 4% per annum.*

> *The sum shall be adjusted by deducting from [husband's] share at the time of payment, reasonable expenses and costs of sale (exclusive of commission), if any . . . .

To date, none of the events in Paragraph 16 has occurred.

¶ 3. In March 2003, wife attempted to refinance the house to pay for the oldest child's college tuition. Her lender requested that husband execute a quitclaim deed evidencing a transfer of all his rights to the property. Wife forwarded this request to husband, and proposed that in exchange for his execution of the quitclaim deed she would execute a promissory note and mortgage deed (with a subordination clause for future refinancing) in his favor. Husband refused to sign the quitclaim deed, and on April 16, 2003 wife filed an emergency motion to enforce to compel husband to sign the quitclaim deed. This motion was filed

while husband's counsel was out of town and with a request for service by mail; husband did not receive notice before the motion was decided.

¶ 4. The trial court granted wife's motion to enforce ex parte, but stated "15 V.S.A. 754 seems to make a certified copy of the judgment the equivalent of a deed, when the judgment is recorded in the land records." When he received notice of the court's decision, husband recorded a certified copy of the divorce decree in the Colchester land records. Through correspondence, husband notified wife of the recording, claiming that the filing fully implemented the court's order, and informed her that he would not execute the quitclaim deed because he believed he had rights in the property that would be extinguished if he did so. Husband further explained that he would execute the quitclaim deed only if it was redrafted with language stating it was subject to the terms of the divorce decree.

¶ 5. Although the decree was promptly filed, the lender refused to accept it as verification that wife held clear title, and wife filed a motion to reconsider her request that husband be ordered to provide a quitclaim deed. This motion reiterated the lender's request and argued that the divorce decree did not give husband any rights in the property to secure wife's eventual payment obligation. The court granted the motion and ordered husband "to quitclaim his interest in the home to [wife] in order to effectuate the terms of the Final Order." Again, the motion was granted before husband received notice that it was filed.

¶ 6. After the motion was granted, husband's counsel entered an appearance and filed a response to wife's emergency motion to enforce and motion to reconsider. The trial court denied husband's motion stating, "The court's order stands." Despite the order, husband has never signed and delivered the quitclaim deed to wife. He has appealed to this Court.

¶ 7. On appeal husband argues the following: (1) the lender must accept the recorded divorce decree as evidence of clear title; (2) the divorce decree, alone or in combination with 15 V.S.A. § 754 or 12 V.S.A. § 2901, created an encumbrance on the house in favor of husband, and his execution of a quitclaim deed would extinguish his rights granted in the decree; (3) the family court improperly modified the divorce decree by compelling husband to commit an act not specified in the decree; and (4) the court erred and abused its discretion when it granted wife's motions ex parte.

¶ 8. We first address husband's second point because it is central to the issues on appeal. On this point, the fundamental disagreement between the parties is the effect of Paragraphs 15 and 16 of the 1998

divorce decree. Citing Paragraph 16, husband argues that the decree necessarily gave him some kind of security interest in the property to secure wife's eventual obligation to pay him for his share of the value of the marital home. Citing Paragraph 15, wife argues that the decree gave husband no interest in the property to secure the debt.

■ ¶ 9. We have used contract principles to construe divorce decrees based on stipulations. See *Kim v. Kim*, 173 Vt. 525, 525, 790 A.2d 381, 382 (2001) (mem.); *Osborn v. Osborn*, 159 Vt. 95, 98, 614 A.2d 390, 393 (1992). Where the language of the decree is unambiguous, we apply it according to its terms. See *Phillips v. Phillips*, 164 Vt. 600, 602, 664 A.2d 272, 274 (1995) (mem.); see also *Duke v. Duke*, 140 Vt. 543, 546, 442 A.2d 460, 462 (1982) ("Where the language is clear, the parties to a contract are bound by the common meaning of the words . . . ."). Applying these principles to the 1998 divorce decree, we cannot find that it created a security interest in favor of husband to enforce wife's obligation to pay him when one of the triggering events occurred. Paragraph 15 unambiguously rendered the house the "sole and separate property" of wife. Although Paragraph 16 of the decree states that husband is to be paid $21,455 for his interest in the house, and it specifies the events triggering payment and provides for interest to accrue, it nowhere indicates that wife's title to the house is encumbered with a lien as security for husband's payment. We agree that the language could have provided for security, see *Scott v. Scott*, 155 Vt. 465, 471, 586 A.2d 1140, 1143 (1990), but it failed to do so. Thus, we reject husband's argument that the decree created an encumbrance. See *First Cmty. Bank of Blanchard v. Hodges*, 907 P.2d 1047, 1052 (Okla. 1995) ("No lien is created in a divorce decree unless the court specifically creates one.").

■ ¶ 10. Husband argues, however, that pursuant to 15 V.S.A. § 754 or 12 V.S.A. § 2901 the 1998 divorce decree created a lien to secure wife's payment obligation once it was recorded in the land records. Section 754 of Title 15 provides:

A certified copy of the judgment, or relevant parts thereof, when recorded in the land records of the town in which real estate of the parties is located, shall be effective to convey or encumber the real estate in accordance with the terms of the judgment, as if the judgment were a deed. A property transfer return shall be filed with the judgment, but the transfer

> shall be exempt from the taxes imposed by chapters 231 and 236 of Title 32 to the extent of the property interests conveyed to either of the parties.

Given the placement of the statute in the annulment and divorce chapter of Title 15, we agree that the judgment described in the statute is a judgment rendered in a divorce or annulment action. We cannot agree that the statute provides husband an encumbrance on wife's title where the 1998 divorce decree does not. Section 754 creates an encumbrance only "in accordance with the terms of the judgment," and, as we held above, the terms of the divorce decree in this case do not create an encumbrance. The purpose of the statute is to eliminate the need to prepare and file instruments providing property interests created in a divorce or annulment decree, rather than to create property interests independent of the decree. Although the similar statutes in effect in a few jurisdictions vary widely in the language they employ, they have been interpreted as not creating liens independent of the divorce decrees they implement. See *Bryan v. Nelson*, 884 P.2d 252, 254 (Ariz. Ct. App. 1994) (because the decree language that guaranteed that plaintiff be paid out of the proceeds of the sale did not create a lien, the recording statute could not create the lien); *First Cmty. Bank*, 907 P.2d at 1051-52 (because of explicit provision creating lien in divorce decree, divorce lien priority over later judgment creditor).

¶ 11. Husband also argues that the recording of the decree created a security interest under the judgment lien statute, 12 V.S.A. § 2901, which states: "A final judgment issued in a civil action shall constitute a lien on any real property of a judgment debtor if recorded as provided in this chapter." Assuming the statute applies to a divorce judgment, it is clearly not intended to create a lien to enable collection of a future liability. Section 2903(c) provides that "[i]f a judgment lien is not satisfied within 30 days of recording, it may be foreclosed" like a mortgage. Obviously, the statute cannot allow foreclosure before the liability has accrued. Thus, the court in *Bryan* held that in order for a divorce decree to create a judgment lien the "judgment 'must be final and conclusive, and the amount due must be definite and certain.'" 884 P.2d at 255 (quoting *McClanahan v. Hawkins*, 367 P.2d 196, 197 (Ariz. 1961)). Considering the decree at issue, the court held, "absent specific language creating an equitable lien, a divorce decree that orders the payment of money at some future time is not conclusive enough to support a general lien ...." *Id. Bryan* is consistent with case law

around the country. See *Carrillo v. Coors*, 901 P.2d 214, 217 (N.M. Ct. App. 1995) (collecting cases).

¶ 12. Our holding on husband's second argument disposes of his first argument — that the bank improperly refused to accept the recording of the divorce decree in the land records. The recording alone left unresolved husband's argument that he had a security interest that was superior to any mortgage obtained by the bank; the bank was certainly entitled to know what security it would obtain. In any event, the bank is not a party in this litigation, and it is free to judge what security is adequate for a prospective loan. See *Vermont Nat'l Bank v. Dowrick*, 144 Vt. 504, 512, 481 A.2d 396, 400-01 (1984) (holding bank was allowed to refuse prospective lender because businesses are free to select business relations in their own interest) (citing Restatement of Torts § 762 cmt. a (1939)).

¶ 13. We also reject husband's third argument that the family court improperly modified the 1998 divorce decree. In doing so, we do not dispute husband's position that the family court was not free to modify the property disposition absent grounds under Rule 60. See *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994). Here, the court issued a supplementary order to enforce the provision of the 1998 decree awarding the house to wife. Such an order is not a modification. See *Schwartz v. Haas*, 169 Vt. 612, 614, 739 A.2d 1188, 1190-91 (1999) (mem.); see also *Sommers v. Sommers*, 742 A.2d 94, 99 (N.H. 1999) (supplementary order that implements the terms of a stipulation is not a modification).

¶ 14. Finally, we reject husband's fourth argument that the family court orders should be set aside because the court erred when it granted wife's motions ex parte. In reaching this conclusion, we agree with husband that the court erred in granting the motions without assuring that husband had proper notice of them and an opportunity to oppose them. Nevertheless, the main issue before the court was one of law, see *Rogers v. Wells*, 174 Vt. 492, 493, 808 A.2d 648, 651 (2002) (mem.) (construction of unambiguous contract is a question of law), and husband was able to present his arguments to the court prior to any transfer of the deed. Our affirmance of the court's legal ruling has rendered the error harmless. V.R.C.P. 61, made applicable to divorce proceedings in the family court by V.R.F.P. 4(a)(1), precludes reversal based on trial court error unless it can be shown that the trial court ruling is "inconsistent with substantial justice." *Ordinetz v. Springfield*

*Family Ctr., Inc.*, 142 Vt. 466, 468, 457 A.2d 282, 283 (1983). The family court orders were necessary to enforce the property distribution in the 1998 divorce decree and were consistent with substantial justice.

*Affirmed.*