*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-479

JUNE TERM, 2015

| | | |
|---|---|---|
| Jennifer T. Johnson | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Gregory B. Johnson | } | DOCKET NO. 393-5-10 Cndm |

Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's order granting wife's motion to enforce the parties' final divorce order. We affirm.

The parties divorced in June 2011 after a nineteen-year marriage. They entered into a marital settlement agreement, which was incorporated into the final divorce order. Under a section entitled "maintenance," the agreement provided: "A savings account in [wife's] name will be created and funded to the amount of $10,000. The total sum will be accumulated as rapidly as cash flow allows with an initial payment of a minimum of $2500 by July 1, 2011 and full funding of this by December 31, 2011." Husband did not fund the savings account, and in May 2014, wife moved to enforce this provision as well as other provisions in the final divorce order. Husband opposed the motion, asserting that he had experienced a significant downturn in his business income and therefore had been unable to fund the account. Husband subsequently moved to modify his spousal-maintenance obligation. He asserted that his obligation to fund the savings account was part of his maintenance obligation and he asked the court to eliminate this obligation given his financial hardship. Wife then moved to enforce husband's maintenance obligation. Various other motions followed.

Following a November 2014 hearing, the court granted wife's motion to enforce, finding as a matter of law that husband was obligated to fund the savings account, including interest that had accrued since December 2011. The court explained that while the phrase "as rapidly as cash flow allows" left some flexibility in the timing of contributions to the account, the requirement that the account be fully funded by December 31, 2011 was unequivocal. Thus, it ordered husband to make this payment, plus interest at the judgment rate, on or before December 31, 2014. Following the court's ruling, husband moved for findings under Vermont Rule of Civil Procedure 52(a)(1). The court denied his request, explaining that the rule did not apply as there had been no trial and the question presented was a pure question of law. It was undisputed that husband had not funded the savings account and the court found no other disputes of fact. This appeal followed.

On appeal, husband reiterates his contention that the savings account was part of the maintenance provision of the parties' marital settlement agreement and that he therefore was entitled to modify this obligation as his financial circumstances had changed. According to husband, the court should have held an evidentiary hearing and decided whether a real, substantial, and unanticipated change of circumstances existed. Husband also asserts that he should not have to pay interest on the unfunded savings account because wife did not request interest and she did not challenge husband's failure to fund the account until 2014.

We review de novo the court's interpretation of the parties' agreement. See Sumner v. Sumner, 2004 VT 45, ¶ 9, 176 Vt. 452 ("We have used contract principles to construe divorce decrees based on stipulations."); John A. Russell Corp. v. Bohlig, 170 Vt. 12, 16 (1999) (question of whether contract is ambiguous presents question of law, as does interpretation of unambiguous contract). "Where the language of the decree is unambiguous, we apply it according to its terms." Sumner, 2004 VT 45, ¶ 9; see also Duke v. Duke, 140 Vt. 543, 546 (1982) ("Where the language is clear, the parties to a contract are bound by the common meaning of the words . . . ."). If the meaning of the contract is ambiguous, however, the issue then becomes a mixed question of law and fact. Cate v. City of Burlington, 2013 VT 64, ¶ 15, 194 Vt. 265. "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 579 (1988).

We agree with the trial court that the provision at issue is clear and unambiguous. While the language is contained within Article 10 of the agreement, entitled "Maintenance," it is evident that husband's obligation to fund the savings account is not an ongoing maintenance obligation. Indeed, Article 10 begins by stating that the "total amount of maintenance is $920,000," to be paid out over time based on a schedule attached as Exhibit 1. Exhibit 1 provides for monthly payments, beginning at $4000 per month in June 2011 and increasing to payments of $6000 per month by July 2012, continuing at this level through 2024. The total amount of these monthly payments is $920,000. The savings account is outside of this obligation. Unlike the monthly maintenance payments, the funding of the savings account was a fixed obligation with a set date for compliance, and the date for compliance has long passed. Husband asserts that maintenance may take "any form." The cases cited by husband in support of this assertion are inapposite. See, e.g., Grant v. Grant, 136 Vt. 9, 12 (1978) (finding that "[p]laintiff's suit for an independent grant of alimony or support seeks a remedy which exists only in equity or under statute but not at common law," and "at least under statute and at common law, the granting of alimony in any form is but an incident to the granting of the divorce, and unless the divorce is granted, the court has no power to grant permanent alimony"). These cases do not persuade us that the savings account was maintenance here.

Even assuming arguendo that this savings account could be considered a form of maintenance, husband's motion to modify was filed long after wife had accrued a vested right to this money. Wife was entitled to the money as of December 31, 2011, and husband did not file his motion until July 30, 2014. While husband might argue for a reduction in maintenance beginning on the date his motion was filed, he would not be entitled to modify maintenance

obligations that had accrued prior to that date. See Hausermann v. Hausermann, 2013 VT 50, ¶ 5, 194 Vt. 123 ("The court has discretion to set the effective date of a maintenance award retroactive to the date the motion to amend was filed.").

We also reject husband's suggestion that he raised "impossibility of performance" as an affirmative defense to wife's motion to enforce. Husband asserted that he had not funded the savings account due to a downturn in business; he did not assert that the contract was unenforceable because his performance was impossible. Even if he had, he cites no case where a court has credited a similar argument that notwithstanding the existence of a clear contractual obligation to pay a debt, a debtor nonetheless is excused from compliance because he cannot afford to pay. There is, however, authority to the contrary. See, e.g., In re Marriage of Hibbard, 151 Cal.Rptr.3d 553, 561 (Cal. App. 2013) (rejecting husband's assertion that he should no longer have to pay spousal support as set forth in marital settlement agreement because his disability rendered it "impossible" for him to pay agreed-upon amount, and finding that husband cited no cases to support his theory that, given this "impossibility," he should be excused from performing his contractual obligation). We are not persuaded that the affirmative defense of impossibility of performance has any relevance here. See, e.g., Kel Kim Corp. v. Cent. Mts., Inc., 519 N.E.2d 295, 296 (N.Y. 1987) (recognizing that as a general rule, "once a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome," and while defense of "impossibility of performance" has been recognized in the common law, it has "been applied narrowly, due in part to judicial recognition that the purpose of contract law is to allocate the risks that might affect performance and that performance should be excused only in extreme circumstances"); see also Restatement (Second) of Contracts, ch. 11, introductory note (1981) ("Contract liability is strict liability. . . . The obligor is therefore liable in damages for breach of contract even if he is without fault and even if circumstances have made the contract more burdensome or less desirable than he had anticipated"). Husband's obligation to fully fund this savings account by December 31, 2011 was not conditioned on the state of his finances. It was an unequivocal obligation and husband was in clear breach of it. There were no factual disputes to resolve in reaching this conclusion and the trial court had no obligation to hold an evidentiary hearing.

We similarly find no error in the court's decision to award wife the interest that had accrued on this debt since December 31, 2011, the date that husband breached his obligation. See V.R.C.P. 54(a) ("In an action where monetary relief is awarded, the amount of the judgment shall include the principal amount found to be due, all interest accrued on that amount up to and including the date of entry of judgment, and all costs allowed to the prevailing party."); Reporter's Notes, V.R.C.P. 54 (recognizing that prejudgment interest is available as damages for detention of money due for breach or default, and such interest is awarded as of right when principal sum recovered is liquidated or capable of ready ascertainment; interest is calculated at statutory legal rate in effect at time of calculation and may run from time of default). We have recognized that "[i]nterest is a legal right of the plaintiff. When a debt becomes payable, if the contract does not stipulate a rate of interest, the statutory or legal rate applies." Greenmoss Builders, Inc. v. King, 155 Vt. 1, 8 (2001) (citation omitted); see also 9 V.S.A. § 41a(a) (providing that "the rate of interest . . . for forbearance or use of money shall be twelve percent per annum computed by the actuarial method"). Wife was legally entitled to interest on this debt

3

as of the date of husband's default and even if wife did not specifically request interest, the court did not err in awarding it to her.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4