*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-038

AUGUST TERM, 2016

| | |
|---|---|
| Gloria Hobson | } APPEALED FROM: |
| | } |
| | } Superior Court, Washington Unit, |
| v. | } Family Division |
| | } |
| | } |
| Edwin Hobson | } DOCKET NO. 208-6-11 Wndm |

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Wife appeals pro se from a final divorce judgment.[1]  She challenges the trial court's property division.  Although we uphold nearly all of the trial court's findings and conclusions, we reverse and remand so that the trial court can address one outstanding issue.

The trial court made the following findings of fact.  The parties were married in 1984 and separated in 2009. Their children are grown.  At the time of the trial, husband was sixty-five years old and wife was sixty-four.  Husband is an attorney in a solo private practice.  Wife has worked for many years for the Vermont Department of Taxes.  The parties maintained separate bank accounts throughout the marriage; husband paid the mortgage, property taxes and utilities from his accounts, and wife paid for the groceries, insurance, most expenses relating to the children (from a prior relationship), gifts, and miscellaneous expenses.  The parties lived a middle class lifestyle.  Wife's income was $77,000, and she hoped to retire soon.  Husband's earnings varied significantly from year to year, and his present earning capacity was at least $100,000 per year.

The marital property was limited.  At the time of the marriage, husband owned property and a house under construction in Middlesex which ultimately became the marital home.  The court found that wife contributed significantly to the work on the house.  The court valued the property at $194,500.  In 1994, husband purchased a 20-acre lot and camp adjoining the marital property.  The court found that it had a value of $114,000.  Wife has a credit union savings account of about $6,500, stock worth $500, and revolving credit card debt of $9,000.  Husband had an IRA worth $986 and two kinds of stock worth $5047 and $282, respectively.  He had credit card debt of $88,500.[2]  Wife had two retirement plans, a deferred compensation plan worth $21,370, and a state pension which, based on the testimony of wife's expert, the court found to have present value

---

[1]  Both parties were represented by counsel at trial.

[2]  In its specific findings, the trial court listed husband's credit card debt borne by husband totaling $88,500.  In its conclusions, the court describes husband's debt as exceeding $68,000.  We use the more specific finding of $88,500.

of $260,000 - $280,000.[3]  Wife's estimated monthly benefit from the pension is $3267.  These valuations are largely uncontested on appeal.

At the center of this dispute are several other assets and debts considered by the trial court.  First, husband is the beneficiary of a 1/11th interest in three irrevocable family trusts, one of which was set to terminate in 2013.  The value of his 1/11th interest was $346,193.  However, during the course of the marriage, unbeknownst to wife, the trust provided husband more than $500,000.  The co-trustee, husband's brother, testified that in light of the substantial past advances to husband, the trust would not be making further distributions to him.  Husband testified that he did not intend to seek to enforce any rights he might have to further distributions.  The court expressed doubts that the trustee had authority under the terms of the trust to treat the prior payments as advances, and to withhold further payment, and found that husband's testimony was sincere, but that husband's receiving no distribution on termination of the trusts was not mandated or inevitable.

Second, husband's law practice had accounts receivable listed on its books in the amount of $400,000.  The court found that despite substantial investments into the law practice (funded in part from the family trusts), the investment has not resulted in acquisition of capital assets for the firm such as buildings, new computers, or other equipment with tangible value.  Recoupment of the investment would depend on the husband's ability to collect on his receivables.

Third, in 1997 husband and wife executed a promissory note for $40,000 to husband's father, secured by a mortgage on the marital home.  The funds were used to sustain husband's law practice.  No payments were made on the loan, husband's father died, and the debt was assigned by will to the family trusts.  The trust has never sought to collect the debt, and the court expressed doubt that the debt was still collectable in light of the applicable statute of limitations.

In dividing the property, the court noted that the uncertain status of husband's interest in the family trust made property division especially challenging.  If husband received a future distribution from the trust, that would affect his opportunity for future acquisition of capital assets and income.  See 15 V.S.A. § 751(b)(8).  If he did not, on account of the prior distributions, his spending of over $500,000 of past distributions during the marriage constituted significant depreciation of the marital estate that the court could consider under 15 V.S.A. § 751(b)(11).  In either event, the court could properly consider husband's interest.  On account of these considerations, the court awarded the trust to husband and concluded that regardless of whether husband ever received any more funds from the trust, wife would be entitled to a greater share than husband of the remaining assets.

Of the remaining assets, the court awarded the home to wife, finding that she had made significant financial and non-financial contributions over the course of a long marriage.  It also awarded wife her deferred compensation benefit, savings account, and stock.  The court awarded husband the camp, his IRA, and stocks. The court assigned each party his or her outstanding credit card debt.

---

[3]  In its findings the court did not specify whether this value represents the entire value of the pension benefit or only the value of the marital portion of wife's pension.  In its findings, the court credited wife's expert's valuation in finding a value of $260,000-$280,000.  That figure represents wife's expert's valuation of the marital portion of wife's pension only, as the expert applied a coverture fraction to the total value of the pension.

With respect to wife's pension, the court found that both parties had need of some retirement income. It rejected husband's request to divide the pension equally without limitation to the marital portion, and instead ordered that the marital portion of the pension be divided equally by QDRO. In considering its division of the pension, the court noted that wife has hopes to retire soon, but husband will need to retire someday, and has variable income from his solo law practice. The court acknowledged that husband's vocational skills and employability were greater than wife's, but concluded that all the other relevant factors pointed to an equal division of the marital portion of the pension.

The court concluded that the present value of husband's law practice was unclear, and that it had not acquired any capital assets. It awarded the law practice to husband. To the extent that the promissory note was enforceable, the court assigned it to husband and ordered him to indemnify and hold wife harmless from any attempts by third parties to collect from her.

The court subsequently denied cross-motions to alter amend the judgment. This appeal by wife followed.

We review the trial court's findings "in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence, and we will not set them aside unless they are clearly erroneous." Solsaa v. Solsaa, 2008 VT 138, ¶ 6, 185 Vt. 587 (mem.) (quotation omitted). The court's statutory authority and responsibility is to "equitably divide" the marital assets considering "all relevant factors." 15 V.S.A. § 751(a), (b). As we have often noted, "property division is not an exact science, and the trial court has broad discretion in considering the statutory factors and fashioning an appropriate order." Cabot v. Cabot, 166 Vt. 485,500 (1997). An abuse of discretion will be found only where the trial court "failed to exercise its discretion, or . . . its discretion was exercised [for] reasons clearly untenable, or to an extent clearly unreasonable." Belanger v, Belanger, 148 Vt. 202, 204 (1987) (quotation omitted) (alteration in original).

Wife's overarching argument on appeal is that this property division is unfairly lopsided in husband's favor, and that she should have been awarded a disproportionate share of the marital portion of her pension to make up for that. We note that, setting aside husband's interest in the trust, the debt to the trust from husband, and husband's law practice's account receivables, the court evenly divided the marital portion of the parties' pension, and wife received a significantly disproportionate share of the assets about which there was no dispute:

|  | Wife | Husband |
|---|---|---|
| Marital Residence | $ 194,500 | |
| Camp | | $ 114,000 |
| Wife's Deferred Compensation | $ 21,370 | |
| Wife's Savings | $ 6,500 | |
| Wie's Stock | $500 | |
| Husband's IRA | | $ 986 |
| Husband's ALPS stock | | $ 5,047 |
| Husband's other stock | | $ 282 |
| Wife's credit card debt | $ (9,000) | |
| Husband's credit card debt | | $ (88,500) |
| Total | $ 213,870 | $ 31,815 |

3

Because the court could not determine whether husband would receive any further distributions from the trust, it assigned whatever value husband's interest may have to husband, and then divided the other major assets disproportionately. Wife's particular challenges on appeal center, for the most part, on the pension, husband's law practice's accounts receivable, and the purported debt from husband and wife to the trust on account of the $40,0000 promissory note they executed in 1997.

Wife first contends the trial court erroneously discredited her age and health as factors in its decision to "equally divide" her pension. As noted, the court, in fact, awarded husband an equal share of the marital portion of the pension based on the traditional coverture fraction, which resulted in an award of substantially less than half of the pension benefit to husband. Moreover, the record discloses that the court recognized wife's age and health problems in its findings. However, the court found that husband and wife were of a similar age, and that both were able to continue to work. It acknowledged that wife hoped to retire soon, and that husband would need to retire someday. It also noted husband's variable income from his solo law practice, and made findings that husband's retirement savings were quite limited. In light of these findings, which are supported by substantial evidence, the court did not abuse its discretion in evenly dividing the marital portion of wife's pension.

Wife next contends the court abused its discretion in awarding husband his legal practice without considering the findings concerning his earning "capacity" of $100,000 per year and the practice's accounts receivable of $400,000. If husband's accounts receivable do in fact have a value of $400,000, then the court's distribution does not accomplish its stated goal of awarding wife a disproportionate share of the marital assets apart from whatever interest husband had in the trust. On the other hand, at the other extreme, if the trial court concludes that the accounts receivable have little value, then its assignment of these receivables to husband is entirely consistent with the trial court's stated goals in dividing the marital property. The trial court heard testimony from husband about the nature and collectability of these receivables. The trial court found that the value of husband's law practice, including these accounts receivable, was unclear and that recoupment of the accounts receivable depended on the ability of the debtors to repay husband. These findings are not sufficient to enable us to evaluate wife's challenge on appeal because they offer little insight as to whether the trial court completely discounted the value of the receivables or whether it concluded that they had some substantial value and awarded them to husband with that understanding. We cannot determine whether the court's findings are supported by the evidence, or whether the court's conclusions and ultimate property division are supported by its findings, without clearer findings concerning the value of the receivables.

Moreover, the record showed, and the court found, that husband's income from the practice varied widely from year to year, recently netting him $70,000 in 2013 and $30,000 in 2014, while wife earned at the time of the hearing $77,000 annually. Given husband's relatively modest annual income from his law practice and the uncertain status of the accounts receivable we cannot conclude that the court abused its discretion in assigning little value to the receivables and awarding husband his legal practice.

Wife next asserts that the court's property division unfairly allowed husband to maintain his standard of living at the expense of wife. The court, in fact, recognized that husband's professional degree and experience gave him greater earning capacity in the future, which supported its decisions to utilize the coverture fraction method to divide the pension rather than an

4

absolutely equal division as husband had advocated, to award the marital home to wife, and to reject husband's request for spousal maintenance. The court noted that divorce typically results in some "downsizing" for both parties, but the record does not support wife's claim that the court unfairly ignored the parties' disparate future earning capacity in its property division.[4]

Wife further claims that the court erred in omitting from the property division husband's beneficial interest in his family trusts. As explained above, the court did not fail to consider husband's past spending from trust distributions and potential future receipts from the trusts. It recognized that given the trustee's testimony that husband had already essentially received his share of the trust in the form of advances, the status of husband's interest in the trust was uncertain. The court accounted for this uncertainty by assigning whatever interest remained to husband but then allocating to "a greater share of the remaining assets," including the marital home, a larger share of her pension, and her deferred compensation savings. Accordingly, we find no error or abuse of discretion.[5]

Wife asserts that the court erred in its disposition of a $40,000 promissory note to husband's father executed by the parties in 1997 and secured by a mortgage on the marital home. Wife contends that the court erred by crediting husband for a "hypothetical" debt that is not really collectable. The record does not support the suggestion that husband received any credit for this debt in the court's property division analysis. Rather, the court expressed doubt about the collectability of the debt, but noted that the trust was not a party to the divorce and so the court could not issue declaratory relief purporting to settle the trust's rights to collect on the note. The court's assignment of the potential debt to husband, along with an obligation to indemnify wife and hold her harmless against attempts to collect the debt, was a reasonable step to account for the possibility of future claims on the note.

Although we conclude that the court did not "credit" husband for this debt, and that the trial court properly assigned to husband any potential obligation on the debt, including a duty to indemnify wife, we do credit wife's argument that the trial court's order failed to address her request that the court require husband to secure a discharge of the mortgage that continues to encumber the marital property assigned to wife. If the trust seeks to collect the debt from wife, husband will have a duty to defend her. But as currently written, the trial court's order creates no obligation on husband's part to take any steps to remove the mortgage and clear wife's title. If wife seeks to sell the property, the burden of seeking discharge of the mortgage, including the

---

[4] Wife also claims that the court misstated her educational attainments, finding that she had completed her bachelor's degree during the marriage when, in fact, she testified that she had an associate's degree in accounting but had not completed her B.A. Wife does not show, nor does the record indicate, that this error affected the decision. See Sumner v. Sumner, 2004 VT 45, ¶ 14, 176 Vt. 452 (noting that this Court will not reverse judgment unless trial court error resulted in "substantial injustice" (quotation omitted)).

[5] Within this argument, wife raises a separate claim that the court erred in excluding an expert witness from testifying as to the meaning of the family trust documents. The court granted husband's motion to exclude the witness, ruling that wife had already conceded that the documents were unambiguous and therefore extrinsic evidence was unnecessary. Although wife asserts that the court "abused its discretion in precluding this evidence," she advances no argument or authority to support the claim or to demonstrate error, and we therefore decline to consider it. See Johnson v. Johnson, 158 Vt. 160, 164 n.* (noting that this Court will not address claims not adequately briefed and argued).

possibility of initiating a quiet title action, will fall to her. That omission appears to be contrary to the trial court's goals in allocating the marital property to wife and any debt on the note to husband, along with a duty to indemnify wife. Because the trial court did not address this issue in its decision, we conclude that it failed to exercise its discretion with respect to wife's request, and we remand so that the trial court can address this issue. See Thompson v. Thompson, 171 Vt. 549, 550 (explaining that when the court is called upon to exercise discretion, failure to do so is an abuse of discretion).

Wife next contends the court erred in failing to award her some portion of her attorney's fees. The judgment provided that the parties would be responsible for their own attorney fees. The court did not explain this ruling or address the significant disparity in wife's and husband's attorney's fees. On remand, the trial court should make findings or provide explanation of its ruling as to attorney's fees.

Reversed and remanded for findings as reflected above.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice