# Susan M. Bell v. David C. Bell

[643 A.2d 846]

Nos. 92-107 and 92-635

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 20, 1994

Motion for Reargument Denied June 17, 1994

*Nancy Corsones* of *Corsones & Corsones,* Rutland, for Plaintiff-Appellant.

*John J. Bergeron* and *Norman C. Smith* of *Bergeron, Paradis, Fitzpatrick & Smith,* Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiff wife appeals from a divorce order, contesting the Chittenden Family Court's award of marital property and maintenance. We affirm in part and reverse in part, and remand for further proceedings based on our conclusion that the trial court did not assign all of the marital assets and denied a cost-of-living adjustment award for an inadequate reason.

The parties were married in 1960 and separated in the Fall of 1989. They had three children, including a son who died when he was 18. At the time of the final hearing, wife was 53 years old. She had completed three years of college and, for approximately ten years during the marriage, she co-owned and worked in a women's apparel store, which she eventually sold. She then performed accounting and bookkeeping for her husband's business for about a year and a half, until the separation. She is in good physical health, but suffers from depression. At the time of trial, wife was unemployed. After taking into account wife's work experience and emotional health, the court concluded that wife's earning capacity is between $7,000 and $10,000.

At the time of the final hearing, husband was 54 years old and also in good physical health, although he had a kidney removed because of cancer within the year prior to trial. Throughout the marriage, he was employed as a life insurance agent, earned far more than wife and enjoyed extensive travel, a boat, and an airplane. Husband's 1990 business income for tax purposes was $76,218 and his gross income was $166,753.

The parties enjoyed a comfortable standard of living during their marriage, based on income from husband's business, various real

estate investments, income generated from land husband inherited during the marriage, borrowed money, and life insurance proceeds received on their son's death. The court found, however, that the parties had no current investments other than an IRA account, a life insurance policy, and a $45,000 promissory note on a property on College Street in Burlington ("College Street note"). Based on this evidence, the court found that the parties were living beyond their means.

The court found that husband was at fault in the breakup of the marriage because of numerous infidelities and that wife was "psychologically devastated" by the separation and her repeated discoveries of the infidelities.

The sole issues before the court were maintenance and property division. After the final hearing, the court awarded the following to the wife:

| | |
|---|---|
| IRAs | $33,294 |
| 54.5% of husband's pension | 60,000 |
| Car | 10,000 |
| Home furnishings | 12,000 |
| Equity in home | 37,000 |
| TOTAL | $152,294 |

The court awarded the following to the husband:

| | |
|---|---|
| "Split-Dollar" life insurance (cash value) | $19,000 |
| 45.5% of husband's pension | 50,000 |
| Car | 10,000 |
| Boat (partial interest) | 3,500 |
| Airplane (partial interest) | 6,500 |
| TOTAL | $89,000 |

The court also awarded husband his business and all assets owned by the business. In addition, husband was directed to pay debts for which he states the total was $47,626. The court specifically directed how the proceeds from the $45,000 College Street note should be disbursed.

Wife requested $3,500 per month in maintenance, and husband proposed $1,500. The court ordered maintenance for wife of $2,500 per month until February 1, 2002 and $1,000 per month thereafter. The court did not provide for cost-of-living increases. The court ordered husband to maintain wife as the beneficiary on the split-dollar life insurance policy and group life insurance policy until husband was 65 years old or to obtain another life insurance policy

with an equivalent death benefit with wife as the beneficiary. Pursuant to V.R.C.P. 59(e), wife moved to amend the judgment on numerous grounds. The court issued an order amending some findings, but declined to reconsider its decisions regarding the cost-of-living clause and the value of the marital home.

Wife appealed the order, and thereafter moved to stay husband's receipt of the proceeds of the College Street note. That motion was denied, and the appeal from that denial has been consolidated with the divorce appeal.[1]

## I.

Wife argues first that the court erred in failing to amend its November 8, 1991 finding valuing the marital home at $315,000, because the home subsequently sold for only $310,000. The result was a reduction in net proceeds from sale of the house from $37,000 to $32,000, and thus a reduction in wife's property award.

We have stated that "[a]s a general proposition, marital assets should be valued as close to the date of trial as possible." *Albarelli v. Albarelli*, 152 Vt. 46, 48, 564 A.2d 598, 599 (1989). The concern addressed by the *Albarelli* rule, however, is that courts not rely on appraisal evidence that is stale at the time of trial. The rule does not address changes that occur after issuance of the court's initial order. The purpose of motions to amend the judgment is to examine the correctness of matters before the court at trial. See *In re Robinson/Keir Partnership*, 154 Vt. 50, 54, 573 A.2d 1188, 1190 (1990) (Rule 59(e) supports "'reconsideration of matters properly encompassed in a decision on the merits.'") (quoting *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 451 (1982)).

The unopposed evidence at trial was that there had been an oral offer to purchase the home for $315,000—evidence that was received very close to the transaction that followed issuance of the initial findings and order. The parties thereafter mutually agreed to lower the sale price by $5,000, and the record does not indicate any understanding between the parties about the impact of that decision on the court's order. Most importantly, the court's order was not framed with a specific dollar award to wife from sale of the house, but rather stated: "The net proceeds from the sale of the marital home

---

[1] In view of our remand on the question of the note proceeds, *infra*, the issue of whether the court should have granted wife's motion for stay is now moot.

after payment of all costs associated therewith are awarded to Plaintiff." Because the court's initial valuation was not in error, it did not abuse its discretion in declining to amend that finding after the actual sale was completed at a modestly lower price.

## II.

Wife next argues that the court erred by overestimating the marital debt that was to be paid from the proceeds of the College Street note and husband retained the remaining proceeds, though they were not assigned to him. The provision of the order relating to the College Street note stated:

> The $45,000 payment from the College Street property due on November 1, 1991, shall be allocated to pay debts of the parties as follows: the anticipated tax indebtedness resulting from the payment; the outstanding debt to Plaintiff's therapist; all property tax arrearages on the marital home. Out of the remaining funds, $8,000 shall be allocated to Plaintiff to pay for her moving expenses, as reimbursement for improvements to the marital home, and to assist her with the cost of her litigation expenses in this matter. The remainder of the funds shall be allocated towards payment of the parties' income tax obligations for 1990.

Wife argues the court erred in finding that the arrearage in property taxes was $6,000 when it was actually $2,720, including a penalty assessment, and that the amount due on the 1990 income tax was not $27,000, but rather $12,493.

Husband's response is similar to his argument concerning the court's finding as to the value of the house as of the date of the initial order—that the findings were sound at the time they were made and were not tainted by later events. We agree that the court's findings were supported by evidence in the record. Unlike that part of the order relating to the proceeds of the house sale, however, the provision in the order awarding the proceeds of the College Street note failed to deal adequately with a possible remainder.

The provision contains an implicit assumption that after the stated allocations, no funds would remain. Wife argues that because the 1990 tax obligation was only $12,493 and the property tax only $2,720, the total funds expended from the $45,000 payment was between $34,343 and $36,343 (the difference depending on the exact amount of the tax indebtedness resulting from receipt of the $45,000 itself). As a result of the same calculations, husband retained between $8,600 and

$10,600—which sum was never specifically awarded to him under the order. Though the record does not allow us to determine specific amounts, we agree with wife's basic argument. While the court was not required to forecast the precise amount of the property tax and 1990 income tax to be paid after the decision, it was required to allocate all of the assets. Cf. *Hendrick v. Hendrick*, 142 Vt. 357, 361, 454 A.2d 1251, 1253 (1982) (incomplete and unreviewable division resulted from court's failure to evaluate all assets). The foregoing language in the court's order does not do this.

■ Husband's only response is that he should be entitled to retain the difference between expected tax payments and actual payments because he "made efforts to reduce that debt before the $45,000 second mortgage money became available." That argument is not reflected in the order. Unlike the provision for sale of the house, there was no assignment by the court of the net proceeds of the note and no common agreement between the parties as to the transactions affecting the amount of net proceeds. Consequently, the matter must be remanded for further proceedings to determine the amount of the net proceeds from the payment of the College Street note and to award these proceeds, within the court's discretion.

In a related claim, wife asserts that husband unilaterally assumed control over monthly interest payments of $400 on the $45,000 College Street note until the note was paid in full. This question was the subject of wife's post-appeal stay motion. It is unclear on the present record: whether wife raised this issue at the divorce trial; whether husband in fact retained the interest payments; if so, whether these funds were accounted for and presented to the court for consideration; and how the court allocated or accounted for this fund, if at all. Because these issues are integrally related to the question of the disposition of the balance of the $45,000 principal payment on the College Street note and that issue is to be considered on remand, the court shall also consider the issues concerning the interest payments.

### III.

■ Wife argues next that the court abused its discretion in awarding her only 60% of the marital property and $2,500 per month alimony up to age 65. Wife does not point to specific factors reflecting an abuse of discretion, but attempts to reweigh the evidence before the trial court under all the statutory factors. The court has consid-

erable discretion in ruling on these matters, and the party seeking to overturn a property and maintenance award must show that there is no reasonable basis to support it. *Klein v. Klein*, 150 Vt. 466, 472, 555 A.2d 382, 386 (1988); *Quesnel v. Quesnel*, 150 Vt. 149, 151, 549 A.2d 644, 646 (1988). Our purpose on appeal is simply to determine "whether [the court's] exercise of discretion was proper." *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190 (1985).

If there is a theme that underlies wife's arguments, it is that husband earned annual gross income of more than $160,000 in the four years prior to the divorce, that his business deductions are higher than average, and that he thus has a higher standard of living than wife. The evidence showed that husband's business expenses were a greater percentage of his gross income (50%) than the average for the insurance business (40 to 45%). The court concluded the difference was not significant, and wife does not attack this finding on appeal. Without more, such as a demonstration that husband's business expenses meet his basic needs to such an extent as to make full deduction of them inappropriate for determining income available for maintenance, it was not an abuse of discretion for the trial court to rely on husband's net rather than gross income.[2]

■ With respect to wife's abuse of discretion claim, we cannot find that the lower court abused its discretion. Wife correctly points to evidence in the record of her nonmonetary contribution as spouse and homemaker to the "acquisition, preservation, and . . . appreciation in value of the respective estates." 15 V.S.A. § 751(b)(11). Her brief recounts the "classic scenario" in which one spouse earns the income and the other does what is required and expected to maintain the household. What she does not explain is how or why the court's findings and conclusions fail to recognize this scenario. The court specifically found: "At the beginning of the marriage, Plaintiff worked for a few years at a medical center. After four years she left her job and assumed primary responsibility for raising the children and caring for the home. Her responsibilities as a homemaker included entertaining Defendant's business friends and associates." Based on her lengthy time away from the job market and on findings that wife had had problems maintaining employment because of her emotional state, the court rejected husband's contention that wife had the potential to earn $24,000 per year. Thus, the court made positive

---

[2] Counsel stated at oral argument that wife is not claiming that husband's business deductions were illegitimate under IRS rules.

findings as to wife's nonmonetary contributions and rejected husband's argument concerning her potential post-judgment earning capacity. The property division was well within the court's discretion and should not be disturbed on appeal.

We draw a similar conclusion on the maintenance award. Wife asserts she is living a "radically lowered" standard of living due to the award, compared to life during the marriage when the parties "took exotic vacations, drove top of the line vehicles, and lived in a very spacious home in a premier residential community in Vermont." The lower court specifically addressed the parties' standard of living:

> There is no question in this case that the parties enjoyed a very comfortable standard of living during the marriage. There is also no question that they could not have maintained their standard of living on the parties['] earned income alone. Their income was consistently supplemented through the sale of assets, their son's life insurance benefits and the indebtedness which they accumulated on the marital home. These additional sources of income *are no longer available* and it is reasonable to conclude that had the parties not separated, *they would have had to curtail their style of living considerably* in order to live within their means.

(Emphasis added.) The court found that granting wife's request for $3,500 per month in maintenance would result in husband's "passing automatically from prosperity to misfortune," while limiting maintenance to $1,500 per month, as requested by husband, would have the reverse effect. Under 15 V.S.A. § 752(b)(3), the proper focus was on "the standard of living established during the marriage." *Klein,* 150 Vt. at 476, 555 A.2d at 388. The court was not barred, however, from examining circumstances or conditions during the marriage that were not likely to persist after it ended. See *DeGrace v. DeGrace,* 147 Vt. 466, 469–70, 520 A.2d 987, 990 (1986) (court's finding on future earning capacity not supported by record where court did not consider undisputed evidence that predivorce income resulted from tremendous overtime during a strike). The lower court weighed the past and the future properly in this case. Its finding that the parties' standard of living would have declined, with or without dissolution of their marriage, was supported by the record.

## IV.

Wife also appeals the trial court's refusal to include a cost-of-living clause in the maintenance order. The trial court denied a cost-of-living

award because it found that "there was no evidence to support an expectation that [husband's] income would rise on a regular basis" and that "there was as much possibility that his income would decrease as it would increase."

Wife argues that the issue is whether the recipient spouse, the spouse with the limited income, should have to incur the expense of a modification petition to obtain a cost-of-living adjustment when such expense will most likely negate the benefit of modification. This argument, however, would apply in every case and, in essence, is for a presumption in favor of cost-of-living adjustment awards. This argument is properly addressed to the Legislature, rather than this Court.

■ Nonetheless, we reverse and remand this issue to the trial court for reconsideration because the reason given to deny the award was inadequate. Under 15 V.S.A. § 752(b)(7), the trial court must consider "inflation with relation to the cost of living" when fashioning a maintenance order. In *Roya v. Roya*, 145 Vt. 488, 494 A.2d 132 (1985), this Court upheld the validity of automatic adjustments for the cost of living, *id.* at 490, 494 A.2d at 134, but specifically required that such an award "provide for situations in which the payor's income does not keep pace with inflationary increases in the cost of living," *id.* at 491–92, 494 A.2d at 135. In other words, even an "automatic" cost-of-living award may not be effectuated in the absence of an increase in the payor's income, and the award must incorporate some mechanism for handling this circumstance. Thus, the court's finding that there was no evidence husband's income would increase in the future is not a reason to deny the award, because a valid cost-of- living adjustment award meets that concern.

## V.

■ Wife also claims that the court abused its discretion in failing to secure the maintenance award with sufficient life insurance. We held in *Justis v. Rist*, 159 Vt. 240, 244, 617 A.2d 148, 150 (1992), that 15 V.S.A. § 752 does not reflect legislative intent to override the long-established rule that the obligation to pay maintenance ceases upon the death of either party. It was, of course, within the court's discretion to order a party to maintain life insurance naming the other party as beneficiary. See *Quesnel*, 150 Vt. at 152, 549 A.2d at 647 (when insurance policy is already in effect, court has authority to order insured party to maintain policy for benefit of spouse). Vermont

law does not, however, require life insurance to effect indirectly what § 752 does not mandate directly—the continuation of maintenance after the death of either party. Husband was ordered to continue an existing life insurance policy, or an equivalent policy, with wife as beneficiary until he was 65, and it was not an abuse of discretion to decline to order more.

## VI.

Finally, wife argues that the court also erred in allowing payment of taxes on the liquidation of a deferred compensation fund out of proceeds of the College Street note, while in an earlier temporary order, the taxes due on the liquidation of this fund were to have been paid from the proceeds of that fund. As this issue was not raised in wife's requested findings or motion to amend and does not otherwise appear to have been raised at trial or preserved for appeal, we will not consider it.

*Reversed and remanded for further consideration of issues concerning the College Street note and a cost-of-living award; otherwise affirmed.*

**Morse, J.,** concurring. In my opinion, sound public policy and common sense ordinarily call for inclusion of a cost-of-living adjustment (COLA) to maintenance. If specific circumstances dictate, the family court has discretion to do otherwise.

A presumption in favor of COLAs is not an issue to be left in the first instance to the legislature. The legislature could hardly have intended that maintenance awards be left to erode in an inflationary economy.