NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 77

No. 24-AP-068

| | |
|---|---|
| In re Cathedral of the Immaculate Parish Charitable Trust Appeal (Carolyn Bates et al., Appellants) | Supreme Court<br><br>On Appeal from Superior Court, Environmental Division<br><br>September Term, 2024 |

Thomas S. Durkin, J.

David L. Grayck of Law Offices of David L. Grayck, North Bennington, and Christopher H. Boyle, Lincoln, for Appellants.

John F. Franco, Jr., Burlington, for Appellee Trust.

Malachi T. Brennan, Geoffrey H. Hand, and Megan E. Noonan of SRH Law PLLC, Burlington, for Appellee City of Burlington.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Dooley, J. (Ret.), Specially Assigned

¶ 1. **COHEN, J.** A group of Burlington residents appeals the Environmental Division's summary judgment order upholding a permit for the Cathedral of the Immaculate Conception Parish Charitable Trust (Trust) to demolish church structures on Trust property. Residents argue the court erred in concluding that 24 V.S.A. § 4413(a)(1)(C) prevented the City of Burlington from applying its Comprehensive Development Ordinance (CDO) to restrain the Trust from demolishing the church structures. Residents also argue that the court erred in denying their motion to compel discovery of information regarding the pending sale of the property to a nonreligious buyer because they assert the sale is relevant to the applicability of § 4413(a)(1)(C). We affirm.

## I. Factual and Procedural Background

¶ 2.     The following facts were undisputed for purposes of summary judgment. The Trust owns property at 20 Pine Street in Burlington, Vermont. The Cathedral of Immaculate Conception has stood on the property since 1977. In May 2018, the Roman Catholic Diocese of Burlington initiated procedures to deconsecrate and demolish the Cathedral pursuant to the canon law of the Roman Catholic Church. According to the Trust, demolition is a way to deconsecrate the property because it will "cleanse" the property and prevent any future nonsacred use of the Cathedral. In September 2022, the Trust received permission from the Roman Catholic Church to deconsecrate the Cathedral.

¶ 3.     In October 2022, the Trust applied for a permit with the City of Burlington's Development Review Board to demolish the Cathedral. The demolition would remove the church buildings, bell tower, parking lot, and impervious pathways. At the time of its application, the Trust contemplated selling the property and thereafter entered into a purchase and sale agreement for the property with a nonreligious buyer.[*] However, the Trust did not plan to fully execute the transaction until the Cathedral was demolished and the property was cleared. The Trust would continue to maintain and use the property until that point.

¶ 4.     In January 2023, the Board approved the permit application. The Board determined that the proposed demolition would neither comply with the application review standards in Article 14 of the CDO, nor would it likely qualify for a variance. However, the Board concluded that because the property was permitted as a place of worship and continued to be owned by a religious entity, 24 V.S.A. § 4413(a)(1)(C) substantially limited review under the CDO and the alternative compliance standards that would ordinarily govern the application were inapplicable. Section 4413(a)(1) of Title 24 states the following:

---

[*] The Trust stated at oral argument that the sale agreement from 2022 has since been terminated. The Trust entered into a new agreement with a different commercial entity sometime after this appeal was filed.

The following uses may be regulated only with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use: . . . (C) churches and other places of worship, convents, and parish houses.

The Board therefore voted to approve the permit.

¶ 5.     Residents appealed the Board's decision to the Environmental Division.  The Trust moved for summary judgment, arguing that the only provision of the CDO related to demolition is in Article 5 of the CDO, which did not apply because the Cathedral was not fifty years old, and that the CDO does not otherwise provide substantive standards for reviewing an application to demolish a building.  The City of Burlington filed its own memorandum agreeing that summary judgment should be granted to the Trust because applying the review standards of Article 14 would violate § 4413(a)(1)(C) by interfering with the intended functional use of the property.   In response, the court ordered the parties to submit additional briefing on the applicability of § 4413(a)(1)(C).

¶ 6.     Residents opposed the Trust's motion and separately moved to compel discovery from the Trust regarding the pending sale of the property.  The court denied this motion, concluding that the sought-after information was unrelated to the issue on appeal.  The court explained that the appeal only required it to determine if § 4413(a)(1)(C) exempted the property from regulation under the CDO, and that question would be resolved by determining whether the CDO regulations had the effect of interfering with the intended functional use.  The discovery sought would effectively go towards "future" intended functional use of the property, which the court lacked jurisdiction to decide.  It explained that it only had authority to consider the past and present uses of the property under § 4413(a)(1)(C).

¶ 7.     Residents subsequently filed a cross-motion for summary judgment, arguing that § 4413(a)(1)(C) did not apply to the Trust property because the Trust had conveyed equitable title

3

to a nonreligious buyer and the nonreligious buyer could not use the property for religious purposes.

¶ 8.     In February 2024, the court issued a decision granting the Trust's motion for summary judgment and denying residents' cross-motion. The court determined that the relevant inquiry under § 4413(a)(1)(C) was whether the intended functional use of the property was for religious purposes. The court found it undisputed that the decision to demolish the Cathedral pursuant to the Roman Catholic Church's deconsecration process involved matters of ecclesiastical significance and was inherently connected to the property's intended functional use. The court concluded that it had no authority to question the ecclesiastical decision-making process to deconsecrate the property by demolishing the Cathedral. The court rejected residents' argument that § 4413(a)(1)(C) did not apply because equitable title had passed to the nonreligious buyer once the purchase and sale agreement was executed. It reasoned that residents were asking the court to look to the future development plans for the property, which exceeded the scope of the permit application. The court also found no support for residents' contention that the future buyer was a co-owner for the purposes of zoning review. It concluded that the demolition application involved "an important step" in deconsecrating the Cathedral under the Roman Catholic Church's ecclesiastical doctrines, and that applying the provisions of the CDO would interfere with the Trust's intent to deconsecrate the property. It therefore held that § 4413(a)(1)(C) applied to the permit application. Thereafter, residents filed this appeal.

## II.  Analysis

¶ 9.     We review a decision granting summary judgment de novo, using the same standard as the trial court. Vt. Coll. of Fine Arts v. City of Montpelier, 2017 VT 12, ¶ 7, 204 Vt. 215, 165 A.3d 1065. "Summary judgment is appropriate when, construing the facts as alleged by the nonmoving party and resolving reasonable doubts and inferences in favor of the nonmoving party,

4

there are no genuine issues of material fact and judgment is appropriate as a matter of law." Sheldon v. Ruggiero, 2018 VT 125, ¶ 14, 209 Vt. 33, 202 A.3d 241 (citing V.R.C.P. 56). In our review of a motion for summary judgment, "we regard as true all allegations of the nonmoving party supported by admissible evidence and give the nonmoving party the benefit of all reasonable doubts and inferences." Wood v. Wallin, 2024 VT 21, ¶ 8, __ Vt. __, 316 A.3d 266 (quotation omitted).

## A. Ownership of the Property

¶ 10.    Residents first argue that § 4413(a)(1)(C) does not limit the application of the City of Burlington's CDO regulations because the Trust entered into a purchase and sale agreement with a nonreligious buyer prior to submitting its application for a permit to demolish the Cathedral. Residents assert that when the Trust entered into the agreement with a secular buyer, equitable title of the property transferred to the buyer, which cannot use the property for a religious purpose because the buyer is not a religious entity. We conclude that, even if the prospective buyer held equitable title at some point, ownership is not a determining factor for purposes of the analysis under § 4413(a)(1)(C).

¶ 11.    "Our goal in interpreting a statute is to give effect to the intent of the Legislature. . . . If the plain language is clear and unambiguous, we enforce the statute according to its terms." In re 204 N. Ave. NOV, 2019 VT 52, ¶ 5, 210 Vt. 572, 218 A.3d 24 (quotations omitted). As noted above, § 4413(a)(1) states:

> The following uses may be regulated only with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use: . . . (C) churches and other places of worship, convents, and parish houses.

As is evident from the plain language of § 4413(a)(1), its applicability does not depend on the identity of the owner of a property. Rather, its unambiguous terms ask only whether a regulation

5

interferes with "the intended functional <u>use</u>" of the property. 24 V.S.A. § 4413(a)(1) (emphasis added). The ownership of the property does not govern whether § 4413(a)(1)(C) applies.

¶ 12.    Our holding is consistent with the purpose of the zoning statutes. As we explained in <u>Vermont Baptist Convention v. Burlington Zoning Board</u>, the Legislature has authorized municipalities to regulate specific uses of land and structures, and density of population and intensity of use. 159 Vt. 28, 30-31, 613 A.2d 710, 711 (1992) (construing language previously found in 24 V.S.A. § 4401 that is now set forth in § 4411). A municipality's zoning power must be consistent with the Legislature's intent and grant of authority and "[t]his enumeration of power refers only to uses and structures, not the identity of the owner." <u>Id</u>. at 31, 613 A.2d at 711. For this reason, we held in <u>Vermont Baptist</u> that the zoning board misclassified a building owned by a nonprofit religious organization as "semi-public" because the board was improperly focused on the nature of the owner, rather than the actual use of the property as a private office and apartment building. <u>Id</u>.; see also <u>In re Sardi</u>, 170 Vt. 623, 624-25, 751 A.2d 772, 774 (2000) (mem.) (noting municipality's statutory zoning power "does not rely on the identity of the owner" but "only with the use of such areas").

¶ 13.    Similarly, the applicability of § 4413(a)(1) depends on use, rather than ownership. To read § 4413(a)(1) as relying on the ownership of the property would be to misconstrue the Legislature's grant of authority. The Trust's execution of a purchase and sale agreement with a potential buyer is therefore irrelevant to the issue of whether § 4413(a)(1) bars application of the CDO to the Trust's permit request.

### B. Use of the Property

¶ 14.    Residents argue that even if ownership is not relevant and the nonreligious buyer could use the property for a religious purpose, the buyer and Trust were not using it for that purpose because the Trust intended to take the property "out of liturgical use." Further, residents argue that the Trust indicated in its permit application that it expected the buyer to apply for

6

redevelopment of the property upon obtaining legal title. We disagree with residents' interpretation of "intended functional use."

¶ 15. To determine what constitutes the "intended functional use" of the property at issue, we first look to the plain language of the statute. In re 204 N. Ave. NOV, 2019 VT 52, ¶ 5. The statute provides that certain uses of property, including "churches and other places of worship," may only be regulated in limited respects and "only to the extent that regulations do not have the effect of interfering with the intended functional use." 24 V.S.A. § 4413(a)(1). Residents effectively interpret the term "intended" to include the future intent of the property owner. However, "intended" is a past participle adjective and past participle adjectives are typically used to describe a present state of being. See Henson v. Santander Consumer USA, Inc., 582 U.S. 79, 84 (2017) (noting past participles, such as "owed," are "routinely used as adjectives to describe the present state of a thing"). "Intended" here plainly refers to the intent for the present use—in other words, the action for which the property owner seeks the permit.

¶ 16. Although the language of § 4413(a)(1) is clear, we note that residents' assertion that an applicant's future intent should be considered is contrary to the Legislature's intent expressed in the statute. See Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 (holding where there is ambiguity we look to Legislature's intent as shown through entire statute, "its subject matter, effects and consequences, as well as the reason for and spirit of the law" (quotation omitted)). In 2000, the federal Religious Land Use and Institutionalized Persons Act (RLUIPA) came into effect. RLUIPA prohibits a government from imposing land use regulations that substantially burden religious institutions and religious exercise absent a showing that the regulation is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1). Section 4413 was enacted in 2003 as part of a general revision to the municipal zoning statutes, after RLUIPA came into effect, and we presume that the Legislature was aware of the limitations RLUIPA set on regulating land used for religious purposes. See 2003,

7

No. 115 (Adj. Sess.), § 95; In re Verizon New England, Inc., 173 Vt. 327, 337-38, 795 A.2d 1196, 1204-05 (2002) (explaining federal law sets floor for requirements under U.S. Constitution and that states must adopt or exceed this minimum when enacting state legislation). We accordingly must construe 24 V.S.A. § 4413(a)(1)(C) strictly to avoid running afoul of RLUIPA. See generally Appeals of Valsangiacomo, Nos. 130-8-03 Vtec, 64-4-04 Vtec (Vt. Env't Ct. Dec. 21, 2004) [https://perma.cc/8VAW-KDB2] (recognizing 24 V.S.A. § 4413(a) guides compliance for zoning ordinances with RLUIPA). To allow review of, and require documentation for, a potential future use of a property at the same time as reviewing the present religious use would interfere with the applicant's ability to execute the present religious use and would not be consistent with the statutory purpose.

¶ 17.  To hold otherwise would also allow zoning officials to engage in speculation as to future permits needed and would lead to advisory opinions by courts on appeal. "Courts are not authorized to issue advisory opinions because they exceed the constitutional mandate to decide only actual cases and controversies." In re Snowstone LLC Stormwater Discharge Authorization, 2021 VT 36, ¶ 28, 214 Vt. 587, 256 A.3d 62. Accordingly, we have held that when considering appeals of applications for construction and zoning permits, the court's review is limited to the present intent at the time of the application and does not encompass potential future uses of the property. See, e.g., id. ¶ 29 (holding only issue on appeal regarding permit application is whether applicant properly received permit "and the necessity to seek any other permit was not properly before the court in an appeal of that authorization"); In re Baker, No. 2006-364, 2007 WL 5313379, at *3 (Vt. May 1, 2007) (unpub. mem.) [https://perma.cc/UD2R-FAPE] (affirming environmental court's decision declining to review evidence of future development and use of a property as part of a pending subdivision application). Whether a future legal owner might change the intended functional use of the property is immaterial to the current application. See Snowstone, 2021 VT

36, ¶ 29 (noting ruling on future permits an applicant may need, and not the permit on appeal, would be an advisory opinion).

¶ 18. As future potential use of the property is irrelevant to the § 4413(a)(1)(C) analysis, we turn to whether the Trust's intended use at the time of the application was religious in nature. The application sought a permit for the demolition of the Cathedral. The Cathedral had an existing permit as a place of worship and is owned by the Trust, which is a religious organization. It is undisputed that the Roman Catholic Diocese of Burlington initiated procedures under canon law to deconsecrate the Cathedral through demolition. The Trust maintains that this is an ecclesiastical process that is closely related to the underlying use of the property as a church, which we do not challenge here. See Turner v. Roman Cath. Diocese of Burlington, 2009 VT 101, ¶¶ 33-34, 186 Vt. 396, 987 A.2d 960 (holding courts are prohibited from "becoming too closely involved in the internal, ecclesiastical matters of religious institutions" and therefore must abstain from deciding questions rooted in religious doctrine).

¶ 19. Residents argue that the Trust stated in its application for demolition that the Trust intended to take the property "out of liturgical use" and expected the buyer to submit an application for redevelopment. However, the process for taking the property out of liturgical use— deconsecration through demolition—is itself a religious use for which the demolition permit was sought. Moreover, as discussed above, any future use by the buyer was not the intended use at the time of the application. Instead, the intended functional use of the property is to deconsecrate the Cathedral by demolition, which the Trust clearly stated in its permit application. The Trust did not state that it is demolishing the structures on behalf of the future buyer. Instead, as the Trust indicated, the potential buyer would have to submit its own applications for any future development. Any such applications were not before the Board or the trial court in this case.

¶ 20. For the same reason, we reject residents' claim that the court erred in denying their motion to compel discovery of the terms of the purchase and sale agreement for the Trust's

9

property. Neither the identity of the proposed buyer nor the buyer's potential future uses of the property were relevant to the issue on appeal, which is whether § 4413(a)(1)(C) barred application of the CDO to this permit application. See V.R.C.P. 26(b)(1) (requiring discovery to be "relevant to any party's claim or defense"); Lay v. Pettengill, 2011 VT 127, ¶¶ 39-40, 191 Vt. 141, 38 A.3d 1139 (upholding trial court's discretionary limitation of discovery requests under Rule 26(b)(1) where information sought was irrelevant to issues). Therefore, the court did not abuse its discretion in denying the motion. See Pcolar v. Casella Waste Sys., Inc., 2012 VT 58, ¶ 11, 192 Vt. 343, 59 A.3d 702 (quotation omitted) (explaining that discovery decisions, including decisions that refuse to compel discovery, "are left to the sound discretion of the trial judge").

¶ 21. Applying the CDO to refuse to permit the Trust to demolish the Cathedral would interfere with the Trust's religious deconsecration of the Cathedral, its intended functional use of a place of worship. We therefore conclude that § 4413(a)(1)(C) prohibits the City from applying the CDO to deny the permit to demolish the Cathedral. The environmental court correctly granted summary judgment for the Trust pursuant to § 4413(a)(1)(C) and denied summary judgment for residents.

Affirmed.

FOR THE COURT:

_____

Associate Justice

10