NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 45

No. 24-AP-336

| | |
|---|---|
| Victoria diMonda | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Civil Division |
| | |
| Lincoln National Corp. d/b/a Lincoln Financial Group et al. | April Term, 2025 |

David A. Barra, J.

Chris S. Dodig of Donovan O'Connor & Dodig, LLP, North Adams, Massachusetts, for
 Plaintiff-Appellant.

Jenny H. Wang of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Costa Mesa, California, for
 Defendant-Appellee The Lincoln National Life Insurance Company.

Alexander M. Dean of Barr, Sternberg, Moss, Silver & Munson, P.C., Bennington, for
 Defendant-Appellee Marsha Barrows.

Bernard D. Lambek, Main Street Law LLP, Montpelier, for Intervenor-Appellee Vermont
 504 Corporation.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Teachout, Supr. J. (Ret.),
          Specially Assigned


¶ 1. **REIBER, C.J.** This appeal concerns entitlement to the proceeds of two life insurance policies. Plaintiff Victoria diMonda claims an equitable interest in a portion of the proceeds based on her stipulated divorce agreement with decedent, which was adopted as a final order by the family division. The civil division denied plaintiff's motion for summary judgment and granted defendants' motions for summary judgment and judgment on the pleadings. We

affirm the judgment granting interpleader relief to defendant USAA Life Insurance Co., but otherwise reverse and remand for further proceedings.

## I. Facts

¶ 2. The following facts are undisputed. Plaintiff and decedent Jonathan Barrows married in 1996 and divorced in 2011. They negotiated the terms of their divorce in a twenty-two-page stipulation, which they signed and submitted to the family division. The court issued a final divorce order that adopted the stipulation in its entirety.

¶ 3. The stipulated order awarded plaintiff sole legal parental rights and responsibilities for the couple's three minor children, who were eleven, ten, and six years old at the time. Paragraph 27 of the order provided for spousal maintenance. It stated that decedent, who served in the military as a navigator on a flight crew, was routinely posted outside the United States for months at a time. He earned $10,148 per month. Plaintiff served as the primary caregiver for the children during the marriage. She worked as a per-diem nurse approximately twelve hours per week at an hourly rate of $26.19, earning roughly $1360 a month. The order provided that in recognition of the difference in the parties' respective incomes, plaintiff's work in caring for the children and maintaining the home, and the length of their marriage, decedent would pay spousal maintenance of $4000 per month from October 2010 to September 2018, and $2500 per month from October 2018 to September 2025.

¶ 4. At the time of the divorce, decedent had a $400,000 Servicemembers Group Life Insurance (SGLI) policy that named plaintiff as the sole beneficiary. The stipulated order contained the following provision in paragraph 32 regarding life insurance:

> [Decedent] shall maintain in place his present life insurance policy with SGLI with a payable on death benefit of $400,000, or a policy which has the same minimum death benefit, at his option. [Decedent] shall name Plaintiff as primary, 100% beneficiary on this life insurance policy for at least the next fifteen (15) years or until such time as [decedent] has paid his spousal maintenance obligation in full, whichever is later.

2

¶ 5.     Decedent married Marsha Barrows in 2013.  In 2015, he obtained a $400,000 life insurance policy from USAA Life Insurance Co. and named Barrows as the sole beneficiary on this policy.  In 2020, he issued a collateral assignment of the USAA policy in the amount of $250,000 to secure a loan he obtained from Vermont 504 Corp. on behalf of his business.  That year, he also obtained a $250,000 life insurance policy from Lincoln National Life Insurance Co. and named Barrows as the primary beneficiary.

¶ 6.     Decedent retired from the military in April 2021, making him ineligible for the SGLI policy.  He did not obtain a policy with the same minimum death benefit that named plaintiff as sole beneficiary.

¶ 7.     After decedent died in December 2023, plaintiff learned that she was not named as a beneficiary on the Lincoln or USAA policies.  In January 2024, plaintiff filed this action against Lincoln, USAA, and Barrows, seeking a declaration that she was entitled to be paid $400,000 under the terms of the final divorce order.  Vermont 504 requested and received permission to intervene due to its claimed interest in the proceeds of the USAA policy.

¶ 8.     Each of the parties then sought judgment in their favor.  Vermont 504 moved for summary judgment, asserting that decedent owed $127,560 on the loan he obtained for his business.  It sought a judgment requiring USAA to pay it that amount.  Barrows moved for judgment on the pleadings.  She argued that the life-insurance provision in the final divorce order was invalid because it would violate this Court's caselaw prohibiting courts from awarding postmortem spousal maintenance.  She further argued that decedent paid $540,250 of his total $594,000 maintenance obligation and that enforcing the life-insurance provision would result in unjust enrichment of plaintiff.  Lincoln also moved for judgment on the pleadings.  Like Barrows, it contended that the life-insurance provision was invalid and unenforceable.  It also argued that even if the provision were enforceable, Lincoln would be entitled to judgment in its favor because the plain language of the order did not apply to Lincoln's $250,000 policy.  USAA moved for

3

interpleader relief in the form of an order requiring it to deposit its policy's death benefit with the court and dismiss USAA from the action. Finally, plaintiff moved for summary judgment in her favor, arguing that the life-insurance provision was enforceable because it was not tied to the spousal-maintenance provision and decedent agreed to it, and that her claim took priority over the claims of Barrows and Vermont 504.

¶ 9. In October 2024, the civil division granted defendants' motions and denied plaintiff's motion. The court first held that neither the divorce order nor the stipulated agreement could give plaintiff an equitable claim to the life insurance proceeds. The court reasoned that Vermont law prohibited the family division from ordering spousal maintenance to continue beyond the life of the obligor spouse or requiring the obligor spouse to maintain life insurance to secure the spousal maintenance award. The court agreed with defendants that the life-insurance provision in the final order was intended to secure spousal maintenance beyond death and was therefore invalid and unenforceable. The court further ruled that the pre-divorce stipulated agreement did not provide a basis for recovery because that document did not contain any language indicating that plaintiff and decedent intended to be bound by its terms independently from the divorce action. The court therefore denied plaintiff's motion for summary judgment and held that Barrows was entitled to retain the $250,000 death benefit paid by Lincoln. It ordered USAA to pay the $400,000 death benefit on its policy into escrow, upon which USAA would be dismissed from the action. It stated it would hold a hearing to determine how much Vermont 504 was owed from that policy, with Barrows to receive the rest.

¶ 10. Plaintiff moved for reconsideration, arguing that the court erred in concluding that the stipulated agreement was not intended to be independently enforceable and requesting that she be allowed to develop evidence on this issue. The court did not rule on her motion. Instead, it granted defendants' proposed final judgment order, which awarded $135,660 from the USAA life

4

insurance proceeds to Vermont 504 and awarded the remaining funds to Barrows. Plaintiff then filed this appeal.

## II. Analysis

¶ 11. We review the trial court's award of summary judgment de novo, applying the same standard as the trial court. In re Cathedral of Immaculate Par. Charitable Tr. Appeal, 2024 VT 77, ¶ 9, __ Vt. __, 328 A.3d 1206. We will uphold summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). Similarly, "[w]e will affirm a judgment on the pleadings if the plaintiff's pleadings contain no allegations that if proven would permit recovery." Hinsdale v. Sherman, 171 Vt. 605, 606, 764 A.2d 1218, 1219 (2000) (mem.).

### A. Availability of Equitable Cause of Action to Recover Life Insurance Proceeds

¶ 12. We begin by addressing as a general matter whether the cause of action brought by plaintiff—namely, an equitable claim to recover life insurance proceeds to which she claims entitlement based on a divorce order—exists under Vermont law. The trial court opined that even if the life-insurance provision in this case were enforceable, there was no authority under Vermont law for plaintiff to recover any of the proceeds. We conclude that this was incorrect.

¶ 13. The general rule is that when "a contract of insurance so provides, the beneficiary may be changed at the instance of the insured, and no vested right, but only an expectancy, exists in the beneficiary, in the absence of facts or circumstances tending to establish an equitable interest in the proceeds of the policy." Travelers' Ins. Co. v. Gebo, 106 Vt. 155, 160, 170 A. 917, 919 (1934). We have long recognized an exception to this rule: "[w]here, however, sound equities exist in favor of the beneficiary, such rights will be protected against the substitution of a second beneficiary who is a volunteer or who has no superior equities in his favor." Id. at 161, 170 A. at 919. The beneficiary's equitable interest may arise from a contract with the insured, id., or from a court order. Travelers Ins. Co. v. Blanchard, 139 Vt. 559, 561, 433 A.2d 296, 298 (1981).

5

¶ 14. In Gebo, we held that the widow of the insured, rather than his brother who was the named beneficiary on his life insurance policy, acquired the equitable right to his life insurance proceeds because she was previously the named beneficiary and had used her money to support the insured when he was ill and dying. Id. at 163, 170 Vt. at 920. We concluded that the decedent's brother "was a volunteer, and his claim cannot override the equitable, but vested, interest of [the widow]. Even if he had acquired an equal equitable interest it would not prevail over hers, because where equities are in other respects equal, priority in time gives the better right." Id.

¶ 15. We extended this principle further in Travelers Insurance Co. v. Blanchard. There, the decedent husband stipulated to a final divorce order requiring him to maintain his existing life insurance policy and name his minor children as beneficiaries. The decedent subsequently changed the beneficiary on his policy to his new romantic partner. After his death, the insurance company filed an interpleader action to determine who was entitled to the death benefit of the policy. We held that the record supported the trial court's conclusion that the proceeds should be awarded to the children even though they were not the named beneficiaries. 139 Vt. at 561, 433 A.2d at 298. We reasoned that the decedent had agreed to make the children his beneficiaries in exchange for provisions in the divorce judgment favorable to him, and there was no evidence that the named beneficiary had superior equities in her favor. Id.

¶ 16. Gebo and Blanchard make clear that Vermont law recognizes a cause of action to recover the proceeds of a life insurance policy based on the insured's violation of a divorce order entitling the plaintiff to the benefits of that policy.[1] Such an action is based in equity, Gebo, 106

---

[1] Numerous other jurisdictions recognize a similar cause of action. See, e.g., Metro. Life Ins. Co. v. Beaty, 493 N.W.2d 627, 631 (Neb. 1993) ("Where, as here, a property settlement agreement validly provides for the disposition of life insurance benefits, the subsequent execution of a change of beneficiary form absent consent of the other party to the agreement is ineffective."); Travelers Ins. Co. v. Daniels, 667 F.2d 572, 573 (7th Cir. 1981) (holding, under Illinois law, that "when a divorce decree orders a party to name his children as beneficiaries of his life insurance policy, those children are entitled to receive the proceeds, even if they were not the named beneficiaries at the time of that party's death"); Simonds v. Simonds, 380 N.E.2d 189, 192 (N.Y.

Vt. at 161, 170 A. at 919, and recognizes the longstanding principle that "[e]quity regards that as done which ought to be done." Stone v. Blake, 118 Vt. 424, 427, 110 A.2d 702, 704 (1955). The trial court therefore erred in suggesting that there was no authority under which plaintiff could seek relief here.

### B. Enforceability of Life-Insurance Provision in Divorce Order

¶ 17.    We accordingly turn to the primary issue on appeal: whether the trial court correctly held that the life-insurance provision in the 2011 divorce order was invalid and therefore could not support plaintiff's equitable claim. As noted above, the court reasoned that the provision was an attempt to secure postmortem maintenance, and Vermont law prohibited the family division from ordering decedent to maintain or buy life insurance to secure spousal maintenance directly or indirectly. We conclude that the caselaw cited by the trial court does not support its determination that the life-insurance provision here was unenforceable.

¶ 18.    The court relied on a line of decisions beginning with Justis v. Rist, 159 Vt. 240, 617 A.2d 148 (1992). In Justis, the husband appealed from the family court's order requiring him, or his estate if he died, to pay wife permanent maintenance until her death. We reversed because 15 V.S.A. § 752 did not expressly authorize the court to continue maintenance beyond the husband's death and such an order was contrary to common law. Id. at 244, 617 A.2d at 150. We noted that § 752 was based on the Uniform Marriage and Divorce Act, but the Legislature did not adopt § 316(b) of the uniform act, which would allow the court to order maintenance to continue beyond the obligor's death. Id. at 242-43, 617 A.2d at 149. We concluded that absent a clearer statement from the Legislature that such an order was permissible, "the courts have no authority

1978) (holding separation agreement requiring decedent to maintain claimant as beneficiary of life insurance policy gave claimant equitable interest in policy that was superior to named beneficiary who gave no consideration).

to order maintenance to continue beyond the life of the obligor spouse unless the parties have agreed otherwise." Id. at 244, 617 A.2d at 150.

¶ 19. We extended this principle the following year in Narwid v. Narwid, 160 Vt. 636, 638, 641 A.2d 85, 87 (1993) (mem.). In that case, we struck a provision in the parties' final divorce order requiring the husband to maintain a $100,000 life insurance policy for the wife's sole benefit for as long as he was required to pay spousal maintenance. The husband did not have an existing life insurance policy at the time of the divorce. We noted that the provision "appear[ed] to be intended to secure the maintenance provision of the decree, as authorized by 15 V.S.A. § 757, but its language does not so limit it." Id. We explained that under Justis, the family court did not have authority to order postmortem maintenance, and "[b]ecause plaintiff will realize benefits from the life insurance policy only upon the death of defendant, these benefits will function as a form of continued maintenance to which she will be no longer entitled." Id. We therefore struck the provision from the divorce order. Id.

¶ 20. The following year, in Bell v. Bell, 162 Vt. 192, 643 A.2d 846 (1994), we reviewed a final divorce order requiring the husband to maintain the wife as the beneficiary on his existing life insurance policies until he was sixty-five years old or to obtain another life insurance policy with an equivalent death benefit naming the wife as the beneficiary. The court also ordered the husband to pay the wife $2500 per month for approximately twelve years and $1000 per month thereafter. Id. at 194, 643 A.2d at 848. On appeal, the wife argued that the family court abused its discretion in failing to secure its maintenance award with life insurance. We rejected this argument. Id. at 201, 643 A.2d at 852. We explained that the court had discretion to order the husband to maintain life insurance for the benefit of the wife under Quesnel v. Quesnel, 150 Vt. 149, 152, 549 A.2d 644, 647 (1988), which held that "in cases where an insurance policy is already in effect, § 762 authorizes the trial court to order that the insured party maintain the policy for the benefit of the spouse." Bell, 162 Vt. at 200, 643 A.2d at 851. We held that "Vermont law does

8

not, however, require life insurance to effect indirectly what § 752 does not mandate directly—the continuation of maintenance after the death of either party." Id. at 200-01, 643 A.2d at 851.

¶ 21. In the subsequent case of Clapp v. Clapp, 163 Vt. 15, 24-25, 653 A.2d 72, 77-78 (1994), we clarified that not only did Vermont law not require the family court to secure a maintenance award with life insurance, it was prohibited from doing so under Justis. In Clapp, the family court ordered the husband to pledge his interest in his law firm or purchase a life insurance policy with an equivalent death benefit to secure maintenance payments to the wife if the husband died before his retirement age of sixty-five years. We held that this requirement was inconsistent with our holding in Justis that the court could not order postmortem maintenance. Id. at 25, 653 A.2d at 78. We explained that "the wording of the court's conclusions [made] clear that the sole purpose of the disputed order is to ensure that wife receives maintenance income after the death of obligor husband, should he die before age sixty-five." Id. Because the provision indirectly attempted to effectuate postmortem maintenance, we struck it from the divorce order. Id.

¶ 22. Similarly, in Theise v. Theise, 164 Vt. 577, 578, 674 A.2d 789, 789 (1996), we struck a provision in a final divorce order that awarded the wife a lump-sum "maintenance" payment from the proceeds of the husband's life insurance policy if he predeceased her. The family court expressly stated in its order "that the provision was intended to protect and preserve the wife's maintenance award should the husband predecease her." Id. at 580, 674 A.2d at 791. We reiterated that "[t]he family court is not authorized to accomplish such a purpose either directly or indirectly by securing post-mortem maintenance payments through a life insurance policy." Id.

¶ 23. As this line of decisions makes clear, the family division does not have authority to order spousal maintenance to continue beyond the obligor's death or to require the obligor spouse to name the obligee as a beneficiary on a life insurance policy for the purpose of securing unpaid maintenance. However, these decisions did not support the trial court's conclusion that the life-insurance provision in this case was unenforceable, for two reasons.

¶ 24.     First, it is not clear that the life-insurance provision was actually intended to secure postmortem maintenance.  This is a critical question, because "[w]e have limited the family court's discretion to order a spouse to maintain an existing life insurance policy for the benefit of the other spouse <u>only where the policy is intended to assure continued maintenance payments following the death of the obligor spouse</u>."  <u>Knowles v. Thompson</u>, 166 Vt. 414, 417, 697 A.2d 335, 336 (1997) (emphasis added) (quotations and citation omitted).

¶ 25.     The 2011 divorce order, in a section labeled "Property, Debts, Insurance and Child Support/Spousal Maintenance," provides for spousal maintenance in paragraph 27.  That section is followed by provisions addressing child support, the parties' investment accounts, decedent's military retired pay, and the parties' other retirement accounts.  The life-insurance provision appears at paragraph 32.  It first states that "[decedent] shall maintain in place his present life insurance policy with SGLI with a payable on death benefit of $400,000, or a policy which has the same minimum death benefit, at his option."[2]  It then states that "[decedent] shall name Plaintiff as primary, 100% beneficiary on this life insurance policy for at least the next fifteen (15) years or until such time as [decedent] has paid his spousal maintenance obligation in full, whichever is later."

---

[2] Because the trial court concluded that the provision was invalid, it did not reach the issue of whether it applied to the USAA or Lincoln policies, both of which were acquired by decedent after the divorce.  In <u>Quesnel</u>, 150 Vt. at 152, 549 A.2d at 647, we upheld a provision in a divorce decree requiring the husband to maintain an existing life insurance policy or a policy with an equivalent death benefit on behalf of the wife.  See 15 V.S.A. § 762 (allowing court to assign insurance benefits to spouse or children in divorce).  Contrary to defendant Barrows' claim, we have never overruled this aspect of <u>Quesnel</u>, and she offers no authority to suggest that this portion of the provision is invalid.  Indeed, we have subsequently upheld similar provisions without comment.  See <u>Bell</u>, 162 Vt. at 201, 643 A.2d at 851-52 (affirming provision requiring husband to maintain existing life insurance policy, or equivalent policy, until age sixty-five).  Thus, decedent's acquisition of these policies after the divorce does not necessarily mean that plaintiff has no equitable interest in them.  We leave it to the trial court to address this issue in the first instance on remand.

¶ 26. If the latter provision were solely intended to secure spousal maintenance, its end date should logically be the same as the termination of decedent's maintenance obligation in September 2025. As drafted, however, the provision required decedent to keep the life insurance policy for plaintiff's benefit until he paid off the maintenance obligation or fifteen years, whichever was later—meaning that under its plain terms, the obligation could theoretically continue beyond the last spousal-maintenance payment. The provision also contained no mechanism to reduce the amount of the death benefit over time as husband paid down the maintenance obligation. These features suggest that the provision was not intended solely to secure decedent's maintenance obligation. Moreover, the agreement as a whole suggests that the parties may have had other reasons for agreeing to the life-insurance provision. For example, it could have been intended to ensure payment of child support or to provide college funds for the parties' three minor children. The end of the fifteen-year period in the life-insurance provision coincides with the twenty-first birthday of the parties' youngest child. Under these circumstances, it is not clear that the provision violates the rule set forth in <u>Theise</u> and its predecessor cases.[3]

¶ 27. We need not resolve this ambiguity, however, because even if the life-insurance provision was intended solely to secure decedent's maintenance obligation beyond his death, there is a second reason why the civil division erred in concluding that it was invalid: the provision was not imposed sua sponte by the family division. Rather, the parties agreed to it as part of their stipulated property settlement, which they submitted to the family court and which the court

---

[3] Defendant Barrows asserts in her brief that the life-insurance provision was intended to secure maintenance but also argues that "more is needed than a mere arguable implication that divorcing parties intended to stipulate to postmortem maintenance" and "nothing suggests that it was intended to circumvent Vermont's otherwise-strict prohibition on postmortem maintenance." Her conflicting arguments demonstrate that the intent of the provision is not entirely clear.

adopted in its entirety.[4]  This makes the provision meaningfully distinguishable from the provisions we struck down in Justis, Narwid, Clapp, Bell, and Theise.

¶ 28.  "Parties to a divorce action are permitted to negotiate the terms of their divorce for themselves."  Kim v. Kim, 173 Vt. 525, 525, 790 A.2d 381, 382 (2001) (mem.).  Property settlement agreements are strongly favored.  Boisclair v. Boisclair, 2004 VT 43, ¶ 5, 176 Vt. 646, 852 A.2d 617 (mem.), overruled on other grounds by Pouech v. Pouech, 2006 VT 40, 180 Vt. 1, 904 A.2d 70.  As we explained in Strope v. Strope:

> There is no indication but that the parties carried on their negotiations in good faith in an effort to amicably resolve their difficulties.  They are permitted by legislative policy to make their own arrangements in this respect by 15 V.S.A. [§ 553].  In the event there is an agreement, the court is not bound to critically examine a stipulation, without good reason in every case, otherwise the statute would not exist.  The status of the stipulation in such a [situation] is a contract, and, if modification is freely indulged or granted without warrant, a party may have forfeited rights or positions of advantage for consideration that suddenly becomes insecure or inadequate.

131 Vt. 210, 216, 303 A.2d 805, 809 (1973).  Thus, "[o]nce a stipulation is incorporated into a final order, concerns regarding finality require that the stipulation be susceptible to attack only on grounds sufficient to overturn a judgment."  Pouech, 2006 VT 40, ¶ 20; see also Riehle v. Tudhope, 171 Vt. 626, 627, 765 A.2d 885, 887 (2000) (mem.) (recognizing that wife could only overturn separation agreement incorporated into divorce order under V.R.C.P. 60); Bucholt v. Bucholt, 152 Vt. 238, 241, 566 A.2d 409, 411 (1989) (holding that unchallenged stipulations accepted by trial court and incorporated into final divorce order are presumed to be fair, formal, and binding on parties).

---

[4]  Defendant Barrows argues that the life-insurance provision cannot be considered as a form of property distribution because it assigned only the benefits of the SGLI policy to plaintiff, not the policy itself.  We are unpersuaded by this argument.  Section 762 of Title 15, which is contained in the subchapter governing property settlement in divorce, permits the family division to assign insurance benefits to a spouse or children as part of its disposition of marital assets.  The life-insurance provision was clearly part of the overall property distribution in plaintiff's and decedent's divorce.

¶ 29.    Consistent with our general rule favoring property stipulations, in Justis we expressly acknowledged that parties to a divorce could independently agree to a provision requiring maintenance to continue beyond the obligor spouse's death.  See 159 Vt. at 244, 617 A.2d at 150 ("[T]he courts have no authority to order maintenance to continue beyond the life of the obligor spouse unless the parties have agreed otherwise." (emphasis added)).  We reiterated this principle in Meier v. Meier, 163 Vt. 608, 610, 656 A.2d 212, 214 (1994) (mem.), where we explained that the obligation to pay maintenance typically ceases upon the death of either party, but "the parties may agree to maintenance following the death of the obligor."  We have reached a similar conclusion in the context of agreements to continue child support beyond the age of majority.  See West v. West, 131 Vt. 621, 624, 312 A.2d 920, 922 (1973) (explaining that although family court cannot order child support beyond age of majority, parties may agree to such provision "and if their agreement finds acceptance with the court hearing the matter, it will be given the status of a contract").

¶ 30.    If, as we acknowledged in Justis and Meier, the parties can agree to postmortem maintenance, it follows that they may agree to secure a maintenance obligation with life insurance. See J. Michalik, Annotation, Divorce: provision in decree that one party obtain or maintain life insurance for benefit of other party or child, 59 A.L.R.3d 9, § 9 (1974) (explaining "generally recognized rule that if the parties have entered into a valid separation agreement or property settlement, a divorce court has the power to incorporate such an agreement in the divorce decree or base the decree on its provisions," even where court "might not, in the absence of an agreement, have the power to make the decree that results from the incorporation of the agreement or the application of its provisions").  Plaintiff and decedent reached such an agreement here and neither of them objected to the stipulation before it was adopted by the family court.

¶ 31.    To hold, as the trial court did, that the family division could not order decedent to maintain life insurance to secure maintenance where he and plaintiff expressly agreed to such a

13

provision would conflict with our caselaw approving agreements in general and would require specifically overruling our statements in Justis and Meier that divorcing parties can agree to postmortem maintenance. We see no compelling reason to do so. Our rationale for not allowing postmortem maintenance in Justis was based on an absence of direction from the Legislature, not a view that such a provision would be contrary to public policy. 159 Vt. at 244, 617 A.2d at 150. We explicitly stated that our holding in that case was not intended to "endorse the notion, as a matter of policy, that post-mortem maintenance awards should not be allowed by statute. To the contrary, it is precisely because we recognize the compelling policy considerations both in favor of and against post-mortem maintenance that we choose to leave this decision to the legislature." Id. at 244, 617 A.2d at 150. A holding that divorcing parties are prohibited from independently agreeing to postmortem maintenance would implicitly decide a policy question that we deliberately refrained from deciding in Justis.

¶ 32.    We therefore reverse the trial court's judgment, except for the portion of the order granting interpleader relief to USAA,[5] and remand for it to consider whether plaintiff is equitably entitled to recover $400,000 or some other amount from the proceeds of either of the policies at issue in this case, and whether her claim takes priority. Because we conclude that the life-insurance provision in the 2011 divorce order is valid, we need not address whether the trial court was correct in its alternative holding that the stipulation was not independently enforceable as a contract.

¶ 33.    The trial court did not reach defendants' claims that the plain language of the life-insurance provision does not entitle plaintiff to the proceeds of the USAA or Lincoln policies because neither existed at the time of the divorce and the Lincoln policy has a lesser face value than the SGLI policy. This is a matter for the trial court to address on remand, along with the priorities of the various parties' competing claims. We also do not address defendants' argument

---

[5] No party challenges the court's award of interpleader relief to USAA and our holding does not affect this aspect of the judgment.

14

that plaintiff only has an equitable interest in the unpaid amount of maintenance under the 2011 order. As discussed above, it is not clear that the life-insurance provision was intended to secure maintenance such that plaintiff's recovery should be reduced in this way. Assuming without deciding that the provision was intended to secure maintenance, however, it is the trial court's role to weigh the equities in the first instance.

Affirmed as to the judgment granting interpleader relief to defendant USAA Life Insurance Co.; otherwise, reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____
Chief Justice

¶ 34. **TEACHOUT, Supr. J. (Ret.), Specially Assigned, dissenting in part.** I dissent as to that portion of the instructions on remand concerning distribution of the $400,000 USAA insurance proceeds. Equity is the basis for plaintiff's entitlement to life insurance for the reasons set forth in the majority opinion, but once plaintiff is entitled to receive life insurance, enforcement of the parties' negotiated stipulation calls for her to have the full USAA policy proceeds, as that $400,000 amount was specifically provided for in the stipulation. Under paragraph 37 of the parties' stipulation, the terms of the stipulation were enforceable irrespective of a court order. Under both the court order and the contract created by the stipulation, plaintiff was guaranteed to be the "100% beneficiary" of $400,000 in life insurance for fifteen years, no matter which end date wound up being applicable. Decedent died within fifteen years of the stipulation. Equitable enforcement of the insurance provision does not extend to giving the trial court the discretion to divide up the funds between plaintiff and other parties whose claims arose later. If decedent had survived until after the longest end date in the life-insurance provision and then died, plaintiff

15

would have had no claim and the USAA proceeds would then have been available to the other parties. That is not what happened here.

¶ 35. There is an insufficient basis to conclude that the alternative end date of the insurance obligation supports the conclusion that the purpose of insurance was to secure payment of unpaid spousal maintenance. The spousal-maintenance obligation could have been modified to end prior to fifteen years, and the terms of the stipulation would still have guaranteed $400,000 in insurance proceeds for the full fifteen years. There are many ways that the full amount of insurance money could benefit a single-parent household with three children as they grow into their early twenties, for needs such as education and housing. The parties agreed that $400,000 in insurance money would be available to plaintiff without limitation if decedent died during the fifteen-year period, which is what happened here. It is obvious that if that happened he would no longer be available to help family members financially on a voluntary basis.

¶ 36. I would order the trial court on remand to award plaintiff the $400,000 proceeds of the USAA insurance policy, award Barrows the full amount of proceeds of the Lincoln policy, and deny the claim of Vermont 504 as moot as no funds would be available for its claim against USAA for insurance proceeds.

¶ 37. For the foregoing reasons, I respectfully dissent on the partial basis described above. I am authorized to state that Justice Eaton joins this dissent.

_____
Superior Judge (Ret.), Specially Assigned

16